**2022-2249**

---

# United States Court of Appeals for the Federal Circuit

---

JASON LAMBRO, individually and on
behalf of similarly situated individuals,
*Appellant*

v.

THE UNITED STATES,
*Appellee*

---

Appeal from the United States Court of Federal Claims
in Civil Action No. 1:21-cv-01447

Judge Zachary N. Somers

---

**CORRECTED BRIEF OF APPELLANT JASON LAMBRO**

Joseph A. Whitcomb, Esq.
Timothy J. Turner, Esq.
WHITCOMB, SELINSKY, P.C.
2000 S. Colorado Blvd.
Tower One, Suite 9500
Denver, CO 80222
303-534-1958
joe@whitcomblawpc.com
tim@wsmlawpc.com

December 14, 2022

# CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellant Jason Lambro certifies the following:

1. The full name of every party represented by counsel for Appellant: **Jason Lambro**

2. The name of the real party in interest represented by counsel for Appellant: **Jason Lambro**

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by counsel for Appellant: **Not applicable**

4. The names of all law firms and the partners or associates that appeared for the party now represented by counsel for Appellant in the trial court or agency or are expected to appear in this court: **Joseph A. Whitcomb and Timothy J. Turner of Whitcomb, Selinsky, P.C.**

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal: **None**

6. All information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases: **Not applicable**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..... i

STATEMENT OF RELATED CASES ..... vi

JURISDICTIONAL STATEMENT ..... 1

STATEMENT OF THE ISSUES ..... 1

STATEMENT OF THE CASE AND FACTS ..... 1

SUMMARY OF THE ARGUMENT ..... 5

ARGUMENT ..... 6

I. Standard of Review ..... 6

II. The Complaint's Allegations Sufficiently Demonstrate Lambro's Entitlement to FLSA Protection. ..... 6

III. Title V has no Bearing on Lambro's Entitlement to FLSA Protection ..... 11

IV. The CoFC's Improper Exclusion of Putative Federal Employees from FLSA Protection based on a Title V Definition is Contrary to Other Courts' Analyses and Thwarts the Purpose of the FLSA. ..... 14

V. The CoFC Erred in Dismissing Lambro's Complaint for Failure to State a Claim upon which Relief can be Granted. ..... 22

VI. Consequently, Declaratory Relief is Available to Lambro. ..... 23

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ................................23

ORAL ARGUMENT STATEMENT .......................................................................24

# TABLE OF AUTHORITIES

Page(s)

Cases

*A.H. Phillips, Inc. v. Walling*,
324 U.S. 490 (1945) ........ 8, 15, 22

*Addison v. Holly Hill Fruit Products*,
322 U.S. 607 (1944) ........ 15

*Agee v. United States*,
77 Fed.Cl. 84 (Fed.Cl.,2007) ........ 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 22

*Barrentine v. Arkansas–Best Freight System, Inc.*,
450 U.S. 728 (1981) ........ 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 22

*Bevans v. Off. Personnel Mgmt.*,
900 F.2d 1558 (Fed. Cir. 1990) ........ 12

*Christopher v. SmithKline Beecham Corp.*,
567 U.S. 142 (2012) ........ 6, 7

*Citicorp Indus. Credit, Inc. v. Brock*,

483 U.S. 27 (1987) ........................................................................................ 15

*Community for Creative Non–Violence v. Reid*,

490 U.S. 730 (1989) ...................................................................................... 18

*Coulibaly v. Tillerson*,

273 F. Supp. 3d 16 (D.D.C. 2017) .................................................................. 15

*Diaz v. United States*,

156 Fed. Cl. 270 (2021) ............................................................................ 15, 19

*Dysart v. United States*,

369 F.3d 1303 (Fed. Cir. 2004)....................................................................... 20

*Faison v. United States*,

102 Fed. Cl. 637 (2012) .................................................................................. 23

*Goldberg v. Whitaker House Coop., Inc.*,

366 U.S. 28 (1961) .......................................................................................... 8

*Guevara v. I.N.S.*,

1992 WL 1029 (Fed. Cir. Jan. 6, 1992) ................................................ 12, 18, 19

*Hurley v. Fuchs*,

2021 WL 4290134 (D.N.M., 2021) ................................................................. 18

*King v. Dalton*,

895 F.Supp. 831 (E.D.Va.,1995)...................................................................... 18

*Lang v. DirecTV, Inc.*,
735 F. Supp. 2d 421 (E.D. La. 2010) ........ 9

*Lindsay v. United States*,
295 F.3d 1252 (Fed. Cir. 2002) ........ 22

*Lopez v. Johnson*,
333 F.3d 959 (9th Cir. 2003) ........ 17

*Nationwide Mut. Ins. Co. v. Darden*,
503 U.S. 318 (1992) ........ 11

*Olson v. United States by and through Department of Energy and Bonneville Power Administration*,
2018 WL 2090604 (D.Or., 2018) ........ 17

*Palardy v. Horner*,
711 F. Supp. 667 (D. Mass. 1989) ........ 8

*Pendleton v. JEVS Hum. Servs., Inc.*,
463 F. Supp. 3d 548 (E.D. Pa. 2020) ........ 8

*Razak v. Uber Techs., Inc.*,
951 F.3d 137 (3d Cir.) ........ 8, 9

*Sandifer v. U.S. Steel Corp.*,
571 U.S. 220 (2014) ........ 6

*Sibbald v. Johnson*,

294 F. Supp. 2d 1173 (S.D. Cal. 2003) ........ 17

*Silver Buckle Mines, Inc. v. United States*,

117 Fed. Cl. 786 (2014) ........ 22

*Spirides v. Reinhardt*,

613 F.2d 826 (D.C. Cir. 1979) ........ 16, 17

*Thompson v. Linda And A., Inc.*,

779 F.Supp.2d 139 (D.D.C. 2011) ........ 15

*United States v. Rosenwasser*,

323 U.S. 360 (1945) ........ 7, 11

*United States v. Testan*,

424 U.S. 392 (1976) ........ 19, 20

*Walby v. United States*,

957 F.3d 1295 (Fed. Cir. 2020) ........ 6

*Walling v. Portland Terminal Co.*,

330 U.S. 148 (1947) ........ 7, 9

*Wilson v. MVM, Inc.*,

2004 WL 1119926 (E.D. Pa. May 18, 2004) ........ 18

Statutes

5 U.S.C. § 101 .......... 11

5 U.S.C. § 105 .......... 10

5 U.S.C. § 2105(a) .......... 12, 14, 16, 17

5 U.S.C. § 2105(a)(1) .......... 1

5 U.S.C. § 5101 .......... 19

5 U.S.C. § 5596 .......... 19, 20

28 U.S.C. § 1295(a)(3) .......... 1

28 U.S.C. § 1491 .......... 1

29 U.S.C. § 203(e)(1) .......... 7, 9, 10

29 U.S.C. § 203(g) .......... 7, 10

29 U.S.C. § 206(a) .......... 6

29 U.S.C. § 207(a) .......... 7

29 U.S.C. § 213 .......... 7

29 U.S.C. §§ 206-207 .......... 1, 22

Rules

Federal Circuit Rule 47.5 .......... 5

Other Authorities

Public Law 89-554 .......... 11

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule ("Fed. Cir. R.") 47.5, counsel for the Plaintiff-Appellant states that:

1. No other appeal in or from the same civil action or proceeding in the lower court or body was previously before this or any other appellate court.

2. Counsel is not aware of any related cases within the meaning of Fed. Cir. R. 47.5(b), i.e., there are no cases known to counsel to be pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

## JURISDICTIONAL STATEMENT

The United States Court of Federal Claims ("CoFC") had original jurisdiction over the civil action that is the subject of the current appeal pursuant to the Tucker Act, 28 U.S.C. § 1491, and 29 U.S.C. §§ 206-207. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(3).

## STATEMENT OF THE ISSUES

Whether the CoFC erred in determining that Plaintiff-Appellant Jason Lambro's ("Lambro") employee-misclassification complaint failed to state a claim upon which relief can be granted, when it held that Lambro is not entitled to Fair Labor Standards Act ("FLSA") protections because he is not an appointed Federal employee, as described in 5 U.S.C. § 2105(a)(1), despite the Government treating Lambro as an employee under multiple prongs of the economic reality test.

## STATEMENT OF THE CASE AND FACTS

### *Facts*

The following is substantially taken from the CoFC's Opinion and Order, section entitled, "BACKGROUND," dated September 20, 2022. (Appx000002).

As alleged in the operative complaint, since 2002, Lambro has worked as a studio technician for Voice of America ("VOA"), a division of the U.S. Agency for Global Media ("AGM" or "Agency"), formerly the Broadcasting Board of Governors. ECF No. 40 ¶¶ 17, 24 (Appx000013) ("2d. Am. Compl."). He

provided services under a series of purchase order agreements that are essentially unchanged from the parties' initial 2002 agreement. *Id.* ¶ 24–25. The agreements contained multiple terms that restricted the manner in which Lambro worked, including provisions that prohibited subcontracting and established deadlines for work product, along with explicitly stating that "no employer-employee relationship exists" between Lambro and the agency. *Id.* ¶ 25; *see generally* ECF No. 40-2 (Appx000032). Despite the explicit statement that no employer-employee relationship exists, Lambro alleged that the agency "significantly controlled and continues to control the timing and management of Plaintiff's work." 2d. Am. Compl. ¶ 28 (Appx000018).

This included the agency telling Lambro when to arrive at work, *id.* ¶ 29 (Appx000019); asking him to "complete . . . non-contracted for tasks," *id.* ¶ 33; supplying his equipment, *id.* ¶ 35 (Appx000020); and asking Lambro "to remain on-call at times if the agency needed [him] at the office," *id.* ¶ 37. Lambro further alleged that he "worked more than 40 hours a week," but did not receive overtime pay or other benefits that his federal employee counterparts received. *Id.* ¶ 38.

In 2018, Lambro formed a limited liability company to contract with VOA under "virtually identical" terms as the predecessor purchase order agreements between Lambro, as an individual, and the Agency. *Id.* ¶ 42 (Appx000021). Lambro alleged that, notwithstanding the agreement between his LLC and the

agency, VOA failed to give him the autonomy generally given to private entities, which resulted in him being unable to take time off work or have someone else complete the contracted-for work. *Id*. ¶ 46 (Appx000022).

Lambro cited in support of his allegations a 2014 audit of AGM. *Id*. ¶ 53–54 (Appx000023). In 2014, the Broadcasting Board of Governors Inspector General released a report that, among other things, found the agency had exceeded its congressional authority in awarding personal service contracts. *See* 2d. Am. Compl. ¶¶ 53–58 (Appx000023-0000024). Plaintiff asserted that this audit is tantamount to an Agency admission that an employer-employee relationship existed between contractors and the agency, which should have resulted in the agency "convert[ing] Plaintiff's and the Class Members' contracts into personal service contracts and award[ing] them FLSA benefits." *See id*. ¶¶ 54–58.

*Procedural Posture*

Lambro filed his complaint in the United States District Court for the District of Columbia in January 2021; however, the following June, the district court transferred the case to the CoFC on Lambro's unopposed motion to transfer. *See* ECF Nos. 11, 20. Lambro filed the operative complaint in this matter in June 2021, *see*, *generally*, 2d. Am. Comp. (Appx000013), where he asserted three grounds for relief: (1) damages and backpay for overtime worked while being misclassified as an independent contractor, in violation of the FLSA; (2) willful

violation of the FLSA, entitling Lambro to damages and backpay for up to three years prior to the filing of his original complaint, rather than two; and (3) declaratory judgment finding that Lambro is an Agency employee for purposes of the FLSA. *Id*. at ¶¶ 69-95 (Appx000026-000031).

Appellee moved to dismiss the complaint on the basis that a portion of Lambro's claims are foreclosed by the three-year statute of limitations, and that the CoFC lacks jurisdiction to grant declaratory relief in this case. *See* ECF No. 41 ("` Mot. Dismiss") at 12-13 and 20-21. On those two grounds, the CoFC agreed with Appellee. This appeal does not challenge the CoFC's decision with respect to the applicable statute of limitations. However, as described further below, declaratory judgment is available to Lambro because he asserted a claim that entitles him to a monetary judgment.

Appellee also moved to dismiss Lambro's first and second claims on the basis that Lambro is not a formally appointed Federal employee, and this fact categorically precludes him from entitlement to FLSA protections that are available to employees and putative employees in the private sector. Def.'s Mot. Dismiss at 13-20. Thus, according to Appellee, Lambro's complaint fails to state a claim upon which relief can be granted. The CoFC agreed with Appellee, dismissing Lambro's count I and II. It is this aspect of the CoFC's decision that is

the primary subject of this appeal: whether Lambro's complaint stated a claim upon which relief can be granted.

## SUMMARY OF THE ARGUMENT

Lambro's complaint plausibly alleged that he was an *employee* under the FLSA – i.e., someone suffered or permitted to work for the Government of the United States in an executive agency, who was treated as an employee under the economic reality test, a test employed by courts to determine employee status under the FLSA and other Federal statutes. Moreover, Lambro's complaint plausibly alleged that Appellee was an *employer* under the FLSA. Taking these allegations as true, Lambro has shown entitlement to the FLSA's minimum-wage and hours-cap protections. Despite this, the CoFC dismissed Lambro's complaint for failure to state a claim upon which relief can be granted, when it created a distinction between Federal and non-Federal employees: Federal employee must be formally appointed under Title V, and, according to the CoFC, without plausibly alleging appointment, a putative Government employee cannot, as a matter of law, establish entitlement to FLSA protection.

This holding is erroneous: The FLSA contains its own expansive definitions, which apply unless there is an express exemption or exception. No such carve-out for misclassified employees of the Federal Government exists. In order for Lambro to satisfactorily allege entitlement to FLSA protection, he need

only plausibly allege that he was an FLSA employee and that Appellee is an FLSA employer. Because Lambro has accomplished this, his complaint states a claim upon which relief can be granted. The CoFC's decision must be reversed.

## ARGUMENT

### I. Standard of Review

When a complaint is dismissed for failure to state a claim upon which relief can be granted, or for lack of subject matter jurisdiction, this Court reviews the legal basis of the lower court's dismissal de novo. *Walby v. United States*, 957 F.3d 1295 (Fed. Cir. 2020).

### II. The Complaint's Allegations Sufficiently Demonstrate Lambro's Entitlement to FLSA Protection.

"Congress enacted the FLSA in 1938 with the goal of 'protecting all covered workers from substandard wages and oppressive working hours.'" *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 147 (2012) (quoting *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 739 (1981)). The FLSA "governs minimum wages and maximum hours for non-exempt employees who in any workweek are engaged in commerce or in the production of goods for commerce, or are employed in an enterprise engaged in commerce or in the production of goods for commerce." *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 224 (2014) (internal quotation marks omitted); *see* 29 U.S.C. § 206(a) (minimum

wages); 29 U.S.C. § 207(a) (maximum hours); *see* 29 U.S.C. § 213 (exemptions). Generally, the FLSA provides that "employee" means "any individual employed by an employer." 29 U.S.C. § 203(e)(1). To "employ" is "to suffer or permit to work." 29 U.S.C. § 203(g). Relevant here, "the FLSA obligates employers to compensate employees for hours in excess of 40 per week at a rate of 1 ½ times the employees' regular wages." *Christopher*, 567 U.S. at 147; *see* 29 U.S.C. § 207(a).

In determining who are employees under Section 203(e) of the FLSA, the United States Supreme Court has held that "common law employee categories or employer-employee classifications under other statutes are not of controlling significance." *Walling v. Portland Terminal Co.*, 330 U.S. 148, 150 (1947) (emphasis added). The Supreme Court further noted that the FLSA "contains its own definitions, comprehensive enough to require its application to many persons and working relationships . . .." *Walling*, 330 U.S. at 150; *see also United States v. Rosenwasser*, 323 U.S. 360, 363 (1945) ("The [FLSA's] use of the words 'each' and 'any' to modify 'employee,' which in turn is defined to include 'any' employed individual, leaves no doubt as to the Congressional intention to include all employees within the scope of the Act unless specifically excluded.") (emphasis added). In 1974, Congress amended FLSA to apply to the Federal Government, seeking "to provide federal employees with as much, but no more, protection than

their counterparts in the civilian economy enjoyed." *Palardy v. Horner*, 711 F. Supp. 667, 672–73 (D. Mass. 1989).

The FLSA's broad definitions correspond to its broad purpose: "to extend the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work." *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (quoting Message of the President to Congress, May 24, 1934) (internal quotation marks omitted). Thus, determination of employee status focuses on economic reality and economic dependence, rather than labels or technicalities. *Goldberg v. Whitaker House Coop., Inc.,* 366 U.S. 28, 81 (1961). Courts across the country, including the United States Supreme Court, have dubbed this analysis the "economic reality test." *See id*.

The economic reality test has six factors: (1) right to control; (2) opportunity for profit or loss; (3) investment in equipment or materials required for employment; (4) the degree of skill required; (5) the degree of permanency and duration of the working relationship; and (6) the extent to which the service rendered is an integral part of the employer's business. *See Pendleton v. JEVS Hum. Servs., Inc.*, 463 F. Supp. 3d 548, 561 (E.D. Pa. 2020). No single factor is dispositive. *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 143 (3d Cir.), *amended*, 979 F.3d 192 (3d Cir. 2020), *cert. denied*, 141 S. Ct. 2629, 209 L. Ed. 2d 755 (2021). Instead, "courts should examine the circumstances of the whole activity,

determining whether, as a matter of economic reality, the individuals are dependent upon the business to which they render service." *Id.* Furthermore, contractual language stating that a worker is an independent contractor is irrelevant in the analysis. *Lang v. DirecTV, Inc.*, 735 F. Supp. 2d 421 (E.D. La. 2010).

Indeed, as the United States Supreme Court has noted, the FLSA "contains its own definitions . . .." *Walling*, 330 U.S. at 150. Looking to these definitions, the CoFC correctly noted that in order to be entitled to the FLSA's protections, one must actually be an employee. Opinion and Order at 6 (Appx000006). However, the CoFC incorrectly interpreted the FLSA to create two distinct standards for Federal and non-Federal employees. *Id.* This distinction is premised on a reading of 29 U.S.C § 203(e)(1), which provides in pertinent part:

> (1) <u>Except as provided in paragraph[] (2)</u> . . ., the term "employee" means any individual employed by an employer.
>
> (2) In the case of an individual <u>employed by a public agency</u>, such term means--
>
> (A) any individual employed by the Government of the United States--
>
> (i) as a civilian in the military departments (as defined in section 102 of Title 5),
>
> (ii) <u>in any executive agency</u> (as defined in section 105 of such title)
>
> (iii) in any unit of the judicial branch of the Government which has positions in the competitive service,

> (iv) in a nonappropriated fund instrumentality under the jurisdiction of the Armed Forces,
>
> (v) in the Library of Congress, or
>
> (vi) [in] the Government Publishing Office . . ..

29 U.S.C § 203(e)(1) (emphasis added).

According to the CoFC: on one hand, non-Federal employees consist of "any individual employed by an employer." *Id*. at ¶ (1). On the other, Federal employees consist of "any individual employed by the Government of the United States" – and, more specifically here, "in any executive agency" (*see* 5 U.S.C. § 105 ("For the purpose of this title, 'Executive agency' means an Executive department, a Government corporation, and an independent establishment.")). *Id*. at ¶ 2(A)(ii). This phrase, "[e]xcept provided in paragraph[] (2)," appears to be the CoFC's sole justification for incorporating into the FLSA a separate law that is mentioned nowhere in the FLSA's text. This distinction is more confounding given that the "paragraph[] (2)" clause only slightly modifies the Government definition of "employer." The definition of "employ" remains unchanged. That is, any individual "employed" by the Government, still means any individual *permitted or suffered to work* by the Government. *See* 29 U.S.C. § 203(g). The concept of appointment is not in the statute.

The United States Supreme Court has observed that the FLSA's definition of employee is in fact "the broadest definition that has ever been included in any one act." *Rosenwasser*, 323 U.S. at 363 n.3; *see also Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (emphasizing the FLSA's expansive definition of "employ" which "cover[s] some parties who might not qualify as such under a strict application of traditional agency law principles"). Yet, defying this guidance, the CoFC decided that the FLSA's expansive definitions should be applied only to the private sector, while with respect to putative Government employees, those same definitions should be strictly limited according to another source of law – i.e., Title V.

## III. Title V has no Bearing on Lambro's Entitlement to FLSA Protection.

Originally enacted in 1966, 5 U.S.C. § 101 et seq. is the section of the United States Code concerning government organization and employees. *See* Public Law 89-554, September 6, 1966, 80 Stat. 378. Title V contains the following definition of Federal employee, which is not expressly referenced anywhere in the FLSA (nor is the FLSA expressly referenced anywhere in Title V):

> (a) For the purpose of this title, "employee", except as otherwise provided by this section or when specifically modified, means an officer and an individual who is--

> (1) appointed in the civil service by one of the following acting in an official capacity--
>
> > (A) the President;
> >
> > (B) a Member or Members of Congress, or the Congress;
> >
> > (C) a member of a uniformed service;
> >
> > (D) an individual who is an employee under this section;
> >
> > (E) the head of a Government controlled corporation; or
> >
> > (F) an adjutant general designated by the Secretary concerned under section 709(c) of title 32;
>
> (2) engaged in the performance of a Federal function under authority of law or an Executive act; and
>
> (3) subject to the supervision of an individual named by paragraph (1) of this subsection while engaged in the performance of the duties of his position.

5 U.S.C. § 2105(a).

To be a Title V Federal employee, one must be "appointed in the civil service" by someone from an enumerated list of individuals acting in an official capacity. *Id*. Appointment is not a specific act, but it includes certain formalities, such as executing standard forms and other paperwork, withholdings from the civil servant retirement fund, and the administration of an oath. *See* Opinion and Order at 6 (Appx000006) (citing, among other cases, *Bevans v. Off. Personnel Mgmt.*, 900 F.2d 1558, 1562 (Fed. Cir. 1990) and *Guevara v. I.N.S.*, No.90–1476, 1992 WL 1029, at *2 (Fed. Cir. Jan. 6, 1992)).

Lambro's complaint alleged that he was an employee misclassified as an independent contractor, and that as a result of his misclassification, Appellee did not appropriately compensate Lambro under the minimum-wage and hour-cap provisions of the FLSA. Based on several prior decisions of that court, the CoFC held that only Title V appointed Federal employees are entitled to FLSA protections on minimum wages and hours caps. Thus, Lambro, nominally an unappointed independent contractor, does not fall within the class of individuals that Congress intended to protect. Accordingly, the complaint does not plausibly state a claim. *See* Opinion and Order at 6-10 (Appx000006-000010).

The CoFC reasoned:

> The complaint alleges many facts that, if Plaintiff was alleging employment by a private employer, would be pertinent to the economic realities test. However, the economic realities test can only prove *constructive* employment. In other words, the nature of the economic realities test is that a court looks at the quality and character of conduct an employee engages in and determines as a matter of law whether or not there is such a degree of control that the person cannot be fairly characterized as an independent contractor. That is not the case with federal employment, which cannot occur in a passive manner without appointment.

*Id*. at 7 (Appx000007) (emphasis in original) (internal citations and quotation marks omitted). But this reasoning is misplaced: Lambro did not allege that he was *constructively* employed by Appellee; Lambro alleged that was *actually*

employed by Appellee under the express statutory definitions of the FLSA, as interpreted by the United States Supreme Court.

Consequently, Lambro did not allege that he was constructively appointed under Title V. *See id* at 7 (Appx000007) (Lambro "has not alleged that he was appointed, or even constructively appointed, which is required for him to state a claim . . ..") (emphasis added). To be an employee who is entitled to FLSA protection, one must only meet the definition of "employee" as set forth in the FLSA. To be entitled to other benefits of Federal employment, however, one must be a 5 U.S.C. § 2105(a) "employee." At bottom, Lambro's claims are premised on the FLSA, not another source of money-mandating law that is applicable only to Federal employees.

## IV. The CoFC's Improper Exclusion of Putative Federal Employees from FLSA Protection based on a Title V Definition is Contrary to Other Courts' Analyses and Thwarts the Purpose of the FLSA.

First, the CoFC has engaged in improper enlargement by implication. As shown in the preceding paragraphs, the FLSA's definitions are broad, and its exemptions and exceptions are limited and precise. Plainly, the FLSA does not incorporate the appointment requirements of Title V into its definition of covered employee. "To extend an exemption to other than those plainly and unmistakably within [the FLSA's] terms and spirit is to abuse the interpretative process and to

frustrate the announced will of the people." *A.H. Phillips, Inc.*, 324 U.S. at 493. "[W]here the FLSA provides exemptions 'in detail and with particularity,' we have found this to preclude 'enlargement by implication.'" *Citicorp Indus. Credit, Inc. v. Brock*, 483 U.S. 27, 35 (1987) (quoting *Addison v. Holly Hill Fruit Products, Inc.*, 322 U.S. 607, 617 (1944)).

Second, while the CoFC has employed this faulty logic to a prior decision of that court (*Diaz v. United States*, 156 Fed. Cl. 270 (2021)), other courts have not been led astray. For example, in *Coulibaly*, the United States District Court for the District of Columbia analyzed whether a blanket purchase agreement ("BPA") holder was a Federal employee for purposes of the Family Medical Leave Act ("FMLA"). *Coulibaly v. Tillerson*, 273 F. Supp. 3d 16, 38 (D.D.C. 2017). There, the Government argued that the plaintiff, "Dr. Coulibaly[,] was not an employee as a matter of economic reality, because the BPAs were explicitly issued to Dr. Coulibaly as a 'contractor' . . ..". *Id*. The court reasoned that although the BPAs identified Dr. Coulibaly as an independent contractor, they gave the Government control over Dr. Coulibaly's work schedule and conditions. *Id*. (citing *Thompson v. Linda And A., Inc.*, 779 F.Supp.2d 139, 148 (D.D.C. 2011) (holding that such factors showed "a significant degree of control," which "weigh[ed] in favor of plaintiffs' employee status")). Accordingly, material questions of fact remained, and the court withheld summary judgment. *Id*. at 39.

In *Spirides*, the United States Court of Appeals for the District of Columbia Circuit analyzed whether a foreign language broadcaster for the Greek Service, a division of VOA, was a Federal employee for purposes of her Title VII discrimination action. *Spirides v. Reinhardt*, 613 F.2d 826, 827 (D.C. Cir. 1979). There, the plaintiff held purchase order vendor contracts that identified her as an independent contractor. *Id*. And, like here, the Government filed a motion to dismiss the plaintiff's complaint on the ground that she was an independent contractor, not a Federal employee entitled to protection. *Id*. The appellate court faced almost exactly the same situation that this Court faces now, Title VII of the Civil Rights Act as a proxy for the FLSA:

> Appellee argues . . . that the test for employee status should be controlled by the statutory definition of the term in [Title V]. This definition of "employee" is found in 5 U.S.C. § 2105(a) (1970) . . ..
>
> . . .
>
> [H]owever, the issue to be decided is not whether [the plaintiff] is an employee under the civil service laws, but whether she may in any respect be deemed an employee under Title VII as amended. Therefore, resort to the civil service definition is unwarranted, and whether or not [the plaintiff] may be deemed an employee cannot be determined merely by noting the absence of her appointment to the civil service. Furthermore, because [Title VII] is remedial in character, it should be liberally construed, and ambiguities should be resolved in favor of the complaining party. Use of the restrictive civil service definition here would not effectuate the broad remedial

> purposes of [Title VII], and would therefore be inappropriate.

*Id*. at 831 (footnotes and quotation marks omitted). The court reasoned that "determination of whether an individual is an employee or an independent contractor for purposes of [Title VII] involves, as appellant suggests, analysis of the "economic realities" of the work relationship. *Id*. Thus, the plaintiff having sufficiently pleaded elements of economic reality test, the appellate court reversed the lower court's dismissal of the complaint on the basis that the plaintiff was not an appointed Federal employee. *Id*. at 833.

Likewise, the United States District Court for the Southern District of California reached a similar conclusion in *Sibbald v. Johnson*, 294 F. Supp. 2d 1173, 1175 (S.D. Cal. 2003) (appointment not required for putative U.S. Navy employee asserting gender discrimination claim under Title VII). As did the United States Court of Appeals for the Ninth Circuit in *Lopez v. Johnson*, 333 F.3d 959, 962 (9th Cir. 2003) (appointment not required for putative U.S. Navy employee asserting disability discrimination claim under Section 501 of the Rehabilitation Act). Other cases involving the application of the economic reality test to Federal Government workers, rather than Title V appointment concepts, include: *Olson v. United States by and through Department of Energy and Bonneville Power Administration*, 2018 WL 2090604, at *6 (D.Or., 2018) (noting that economic realities of the plaintiff's employment relationship indicated that she

was an employee of the United States Department of Energy for purposes of the Family Medical Leave Act); *Wilson v. MVM, Inc.*, CIV.A.03-4514, 2004 WL 1119926, at *1 (E.D. Pa. May 18, 2004), *aff'd*, 475 F.3d 166 (3d Cir. 2007) (applying thirteen-factor common-law agency test from *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 751–52 (1989) to determine whether plaintiffs were employees of the United States Marshalls Service for purposes of their Rehabilitation Act claims); *King v. Dalton*, 895 F.Supp. 831, 837–38 (E.D.Va.,1995) (applying *Spirides* factors to determine whether the plaintiff, a Booz-Allen employee, was also a United States Navy employee for purposes of her Title VII discrimination action); *Hurley v. Fuchs*, 2021 WL 4290134, at *6 (D.N.M., 2021) (applying economic reality test to determine whether United States Social Security Administration group supervisor had employed the plaintiff for purposes of the plaintiff's FLSA action).

In support of its Order dismissing Lambro's complaint, the CoFC relied on a single, non-precedential decision of this Court, *Guevara v. I.N.S.*, No. 90–1476, 1992 WL 1029 (Fed. Cir. Jan. 6, 1992). Opinion and Order at 7 (Appx000007). There, a panel of this Court affirmed the dismissal of the plaintiffs' complaint by the United States District Court for the Southern District of Texas, where pre-trial immigration detainees worked for the United States Immigration and Naturalization Service ("INS") at a processing center in Brownsville, Texas.

*Guevara*, 1992 WL 1029 at *1. The lower court dismissed the plaintiffs' claims on the grounds that plaintiffs sought work voluntarily, not out of economic necessity, and that "it was not within the legislative purposes of the FLSA to protect those in plaintiffs' position." *Id*. This Court agreed with the lower court's rationale; however, it also held that the plaintiffs did not demonstrate entitlement to FLSA protection because they were not appointed under Title V. *Id*. The Court stated that "Congress was not unaware of the situation in which these detainees might find themselves," appearing to infer that Congress intentionally excluded unappointed Government workers from FLSA protection, because the FLSA makes no mention of appointment. *Id*. at *2.

The *Guevara* court relied on *Testan* for the proposition that one is not entitled to the benefit of a position unless duly appointed to it. *Id*. (citing *United States v. Testan*, 424 U.S. 392, 402 (1976)). Yet, *Testan* is not a case that concerns the FLSA: in *Testan*, two Federal Government attorneys sought retroactive reclassification from civil service grade GS-13 to GS-14 with backpay. *Id*. at 393. The issue before the United States Supreme Court was whether the Classification Act, 5 U.S.C. § 5101 et seq., and the Back Pay Act, 5 U.S.C. § 5596, were money-mandating sources of law that conveyed jurisdiction to the United States Court of Claims, a predecessor to the CoFC, under the Tucker Act. *Id*. at 399. According to the Court, neither of these laws were money-mandating. *Id*. at 407. "Neither the

Classification Act nor the Back Pay Act creates a substantive right . . . to back pay for the period of claimed wrongful classifications." *Id*. Unlike in *Testan,* here, Lambro's complaint raises entitlement relief under the FLSA, a money-mandating statute. *See Agee v. United States*, 77 Fed.Cl. 84, 88 (Fed.Cl.,2007).

This Court, in *Dysart*, a precedential case decided after *Guevara*, recognized that when a plaintiff asserts grounds for relief under a money-mandating statute, the general rule of *Testan* – that one is not entitled to the benefit of a position until he or she has been duly appointed to it – is "inapplicable." *Dysart v. United States*, 369 F.3d 1303, 1315 (Fed. Cir. 2004) (plaintiff pleaded entitlement to monetary relief under the Military Pay Act). It is undisputed that the FLSA is a money-mandating source of law. *See* Opinion and Order at 3 (Appx000003); *Agee*, *supra*. Thus, this Court has foreclosed the CoFC's central reason for dismissal.

In any case, the instant dispute is most similar to that of *Spirides*, not only in that it involves essentially the same executive agency (i.e., the agency responsible for VOA), but in that this case and *Spirides* both involve nominally independent contractors that worked for many years subject to strict control by the agency. Likewise, when Lambro and the *Spirides* plaintiff sought relief, both faced motions to dismiss from the Government on the basis of lack of Title V appointment. In the Court of Appeals for the District of Columbia Circuit, the court recognized that one need not be appointed in order to be a Title VII employee, entitled to the

protections of that act. Here, the Court should follow the reasoning of the *Spirides* court and find that Lambro need not be appointed in order to be a FLSA employee, entitled to FLSA protections. Lambro is not, like the plaintiffs in *Guevara*, a pre-trial immigration detainee doing odd jobs for a warden for a dollar a day: he worked for AGM for nearly two decades, alongside appointed Federal employees, supervised by an appointed Federal employee, in a Federal facility with Federal equipment, for purposes of producing a Federal program.

Finally, the Court should look to the policy implications of the CoFC's decision. Should the Court allow the CoFC's decision to stand, a class of putative Government employees – nominally, independent contractors – will be excluded from protections afforded to both formally-appointed Government employees and misclassified employees of private-sector entities. In drafting a statute with the broadest possible definitions of "employ," "employee," and "employer," did Congress intend to exclude individuals like Lambro? No doubt, it is concerning that the FLSA (1938), and the United States Supreme Court's adoption of the economic reality tests for purposes of employee determinations within the context of the FLSA (1961), both predate the enactment of Title V (1966). Could Congress have contemplated the appointment-based definition of "employee" from Title V when drafting the FLSA? Given that the FLSA has been amended since the enactment of Title V, without any changes made relative thereto, did Congress

really intend to exclude workers like Lambro from basic protections that provide "a fair day's pay for a fair day's work?" *See A.H. Phillips, Inc.*, 324 U.S. at 493.

## V. The CoFC Erred in Dismissing Lambro's Complaint for Failure to State a Claim upon which Relief can be Granted.

Even if a plaintiff in the CoFC alleges entitlement to relief under a money-mandating source of law, like 29 U.S.C. §§ 206-207, that plaintiff must state a claim upon which the court can grant relief. "When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court accepts all well-pled facts as true and draws all reasonable inferences in plaintiff's favor." *Silver Buckle Mines, Inc. v. United States*, 117 Fed. Cl. 786, 791 (2014) (citations omitted). Granting a motion to dismiss for failure to state a claim "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). Denial of the motion is warranted when the complaint presents "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Based on the foregoing discussion, Lambro is entitled to FLSA protection because he alleged facts in his complaint that, taken as true, demonstrate he was an FLSA employee and Appellee was an FLSA employer. Accepting the remaining

allegations of Lambro's complaint as true – that is, control, dependence, etc., and, essentially, that Lambro worked a sufficient number of hours per week to be entitled to some compensation in excess of what he actually received from Appellee – then the complaint indeed stated grounds for Lambro to obtain monetary relief. Thus, Appellee's motion to dismiss Lambro's complaint for failure to state a claim upon which relief can be granted was properly denied.

### VI. Consequently, Declaratory Relief is Available to Lambro.

The CoFC correctly noted that for it to be empowered to grant declaratory relief, there must be a claim that on the merits entitles Lambro to a monetary judgment. Opinion and Order at 10 (Appx000010) (citing *Faison v. United States*, 102 Fed. Cl. 637, 643 (2012)). As shown in the preceding paragraphs, the complaint has sufficiently stated a claim for a monetary judgment – that is, damages and backpay under the FLSA. Thus, the CoFC did not lack subject matter jurisdiction to issue declaratory relief.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the foregoing reasons, Appellant respectfully requests that this Court:

1. Reverse the CoFC's Order dismissing Lambro's complaint, counts I and II, for failure to state a claim upon which relief can be granted.

2. Reverse the CoFC's Order dismissing Lambro's complaint, count III, for lack of subject matter jurisdiction.

3. Remand the case for further proceedings.

## ORAL ARGUMENT STATEMENT

Due to the significance of the issues raised in this appeal, oral argument is requested.

Respectfully submitted this 14th day of December 2022.

*/s/* Joseph A. Whitcomb
Joseph A. Whitcomb
Timothy J. Turner
Whitcomb, Selinsky, PC
2000 S. Colorado Blvd.,
Tower One, Suite 9500
Denver, CO 80222
(303) 534-1958 (office)
(303) 534-1949 (fax)
joe@whitcomblawpc.com
tim@wsmlawpc.com

*Counsel for the Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2022-2249

**Short Case Caption:** LAMBRO v. U.S.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 5483 words.

☐ the filing has been prepared using a monospaced typeface and includes ___________ lines of text.

☐ the filing contains ___________ pages / ___________ words / ___________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ___________).

Date: 12/13/2022

Signature: /s/ Joseph A. Whitcomb

Name: Joseph A. Whitcomb

# In the United States Court of Federal Claims

No. 21-1447 C
(Filed: September 20, 2022 )

* * * * * * * * * * * * * * * * * * *

**JASON LAMBRO**,

Plaintiff,

v.

**THE UNITED STATES**,

Defendant.

* * * * * * * * * * * * * * * * * * *

*Joseph A. Whitcomb*, Whitcomb, Selinsky, PC, of Denver, CO, for Plaintiff.

*Matthew J. Carhart*, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, D.C., for Defendant, and *Jessie James* and *Maryellen Righi*, Assistant General Counsels, U.S. Agency for Global Media, of Washington, D.C., of counsel.

## OPINION AND ORDER

**SOMERS**, Judge.

Before the Court is the government's motion to dismiss Plaintiff Jason Lambro's ("Plaintiff") transfer complaint for lack of subject matter jurisdiction and failure to state a claim. Plaintiff alleges that the U.S. Agency for Global Media ("USAGM" or "agency") willfully misclassified him and other similarly situated individuals as independent contractors rather than employees. Because of this misclassification, Plaintiff alleges that he did not receive benefits he was entitled to as a federal employee, namely overtime pay under the Fair Labor Standards Act ("FLSA" or the "Act"). In response, the government moved to dismiss all claims that accrued prior to January 28, 2018, as well as Plaintiff's claim for declaratory relief, for lack of subject matter jurisdiction. In addition, the government moved to dismiss the remainder of Plaintiff's complaint for failure to state a claim upon which relief may be granted because Plaintiff cannot establish that he is a federal employee entitled to the FLSA's protections. The government's motion to dismiss has been fully briefed, and the Court held oral argument on June 15, 2022. For the reasons explained below, the Court grants the government's motion to dismiss.

Case 1:21-cv-01947-ZNS Document 51 Filed 09/01/22 Page 2 of 11

## BACKGROUND

### A. Factual History

As alleged in the operative complaint, since 2002, Plaintiff has worked as a studio technician for Voice of America ("VOA"), a division of USAGM. ECF No. 40 ¶¶ 17, 24 ("2d. Am. Compl."). He provided services under a series of purchase order agreements that are essentially unchanged from the parties' initial 2002 agreement. *Id.* ¶ 24–25. The agreements contained multiple terms that restricted the manner in which Plaintiff worked, including provisions that prohibited subcontracting and established deadlines for work product, along with explicitly stating that "no employer-employee relationship exists" between Plaintiff and the agency. *Id.* ¶ 25; *see generally* ECF No. 40-2. Despite the explicit statement that no employer-employee relationship exists, Plaintiff states that the agency "significantly controlled and continues to control the timing and management of Plaintiff's work." 2d. Am. Compl. ¶ 28. This included the agency telling Plaintiff when to arrive at work, *id.* ¶ 29; asking him to "complete . . . non-contracted for tasks," *id.* ¶ 33; supplying his equipment, *id*. ¶ 35; and asking Plaintiff "to remain on-call at times if the agency needed [him] at the office," *id.* ¶ 37. Plaintiff further alleges that he "worked more than 40 hours a week," but did not receive overtime pay or other benefits that his federal employee counterparts received. *Id.* ¶ 38. In 2018, Plaintiff formed a limited liability company to contract with VOA under "virtually identical" terms as the predecessor purchase order agreements between Plaintiff and the agency. *Id.* ¶ 42. Plaintiff alleges that, notwithstanding the agreement between his LLC and the agency, VOA failed to give Plaintiff the autonomy generally given to private entities, which resulted in him being unable to take time off work or have someone else complete the contracted-for work. *Id.* ¶ 46.

Plaintiff cites in support of his allegations a 2014 audit of USAGM. *Id.* ¶ 53–54. In 2014, the Broadcasting Board of Governors[1] Inspector General released a report that, among other things, found the agency had exceeded its congressional authority in awarding personal service contracts. *See* 2d. Am. Compl. ¶¶ 53–58. Plaintiff asserts that this audit is tantamount to an agency admission that an employer-employee relationship existed between contractors and the agency, which should have resulted in the agency "convert[ing] Plaintiff's and the Class Members' contracts into personal service contracts and award[ing] them FLSA benefits." *See id.* ¶¶ 54–58.

### B. Procedural History

Plaintiff originally filed his complaint in the United States District Court for the District of Columbia on January 28, 2021. *See* ECF No. 1. Shortly thereafter, Plaintiff filed an unopposed motion to transfer his case to this Court. *See* ECF Nos. 9–11. The district court granted the motion and Plaintiff filed a transfer complaint in this Court on June 17, 2021. *See* ECF Nos. 11, 20. Plaintiff filed a second amended complaint on November 5, 2021, asserting three grounds for relief. *See* 2d. Am. Compl. Count I of the complaint seeks damages and backpay for overtime worked while Plaintiff was allegedly misclassified as an independent contractor. *Id*. ¶¶ 69–82. Count II asserts that the agency willfully violated the FLSA, entitling Plaintiff to damages and back pay for up to three years prior to the filing of his complaint. *Id.*

[1] Now known as the United States Agency for Global Media.

¶¶ 83–88. Count III requests a declaratory judgment finding that Plaintiff is an agency employee. *Id.* ¶¶ 89–95. In response, the government moves to dismiss Plaintiff's complaint on three grounds: first, the FLSA's three-year statute of limitations for willful FLSA violations forecloses all claims that accrued prior to January 28, 2018, *see* ECF No. 41 at 12–13 ("Def.'s Mot. Dismiss"); second, Plaintiff failed to state a claim, as he is not a federal employee, *see id.* at 13–20; and third, because both Count I and II must be dismissed, the Court lacks jurisdiction to grant the declaratory relief requested in Count III, *see id.* at 20–21.

## DISCUSSION

### A. Legal Standard

#### 1. Motion to Dismiss for Lack of Jurisdiction

The United States Court of Federal Claims, like all federal courts, is a court of limited jurisdiction. Under the Tucker Act, this Court may "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). However, "[t]he Tucker Act does not, of itself, create a substantive right enforceable against the United States." *Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013) (citing *Ferreiro v. United States,* 501 F.3d 1349, 1351 (Fed. Cir. 2007)). Rather, to state a claim within the Court's jurisdiction, "the plaintiff must identify a separate contract, regulation, statute, or constitutional provision that provides for money damages against the United States." *Id*. Stated differently, the plaintiff must state a claim that is based on a provision that "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained," *United States v. Mitchell*, 463 U.S. 206, 216–17 (1983) (citing *United States v. Testan*, 424 U.S. 392, 400 (1976)), and is "reasonably amenable to the reading that it mandates a right of recovery in damages," *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473 (2003). In addition, even if a plaintiff brings a claim based on a money-mandating source of law, the claim must also be brought within the applicable statute of limitations in order for it to be within the Court's jurisdiction. *See Martinez v. United States*, 333 F.3d 1295, 1316 (Fed. Cir. 2003) ("It is well established that statutes of limitations for causes of action against the United States, being conditions on the waiver of sovereign immunity, are jurisdictional in nature.").

#### 2. Motion to Dismiss for Failure to State a Claim

Even if a plaintiff alleges entitlement to relief under a money-mandating source of law, the plaintiff must still state a claim upon which the Court can grant relief. "When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court accepts all well-pled facts as true and draws all reasonable inferences in plaintiff's favor." *Silver Buckle Mines, Inc. v. United States*, 117 Fed. Cl. 786, 791 (2014) (citations omitted). Granting a motion to dismiss for failure to state a claim "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). Denial of the motion is warranted when the complaint presents "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**B. Analysis**

**1. The Court Lacks Jurisdiction over Claims that Accrued Prior to January 28, 2018**

In his complaint, Plaintiff alleges, *inter alia*, that VOA willfully violated the FLSA by misclassifying him as an independent contractor rather than an employee. *See* 2d. Am. Compl. ¶¶ 83–88. The statute of limitations for most FLSA claims is two years, unless the employer willfully violates the Act, which adds another year to the limitations period. *See* 29 U.S.C. § 255(a). The government, in its motion to dismiss, argues that even if Plaintiff was able to establish a willful violation of the FLSA, the Court would still lack jurisdiction over all claims "that accrued before January 28, 2018," because they "are barred by the FLSA's statute of limitations" as they arose more than three years prior to when Plaintiff filed his original complaint in district court. *See* Def.'s Mot. Dismiss at 12. Plaintiff's response does not address the government's statute of limitations argument, *see generally* ECF No. 42 ("Pl.'s Resp."), and, unsurprisingly, counsel for Plaintiff conceded at oral argument that the government was correct with regard to these claims, *see* ECF No. 50 ("Tr. Oral Argument") at 4–5. Accordingly, as the Court lacks subject matter jurisdiction over all claims that accrued prior to January 28, 2018, such claims are dismissed. *See also Sarro & Assocs., Inc. v. United States*, 152 Fed. Cl. 44, 58 (2021) ("A party's failure to raise an argument in an opening or responsive brief constitutes waiver." (citing cases)).

**2. Because Plaintiff Is Not a Federal Employee, Counts I and II Fail to State a Claim**

Counts I and II of Plaintiff's complaint allege that VOA misclassified Plaintiff as an independent contractor thereby denying him "overtime pay, liquidated damages, and any other relief provided by the FLSA." 2d. Am. Compl. ¶¶ 82, 88. Although Plaintiff acknowledges that he was considered an independent contractor by VOA, he argues that, despite this classification, based on the economic realities test, he was, in reality, a VOA employee for purposes of the FLSA. *See id*. ¶¶ 20, 75, 76, 94. In response, the government asserts that because Plaintiff "was never appointed as a Federal employee, nor was he hired pursuant to specific Congressional authority creating an employer-employee relationship, he is not a Federal 'employee' under the FLSA." Def.'s Mot. Dismiss at 13. Accordingly, the government moves to dismiss Counts I and II of Plaintiff's complaint on the grounds that Plaintiff has failed to state a claim upon which relief may be granted because Plaintiff cannot establish that he is a federal employee entitled to the FLSA's protections. *See id.*; *see also Diaz v. United States*, 156 Fed. Cl. 270, 275 (2021) ("Whether [plaintiff] is an employee of the USPS is a legal question, not a factual allegation. Therefore, a plaintiff cannot assert by merely pleading, in a conclusory fashion, that he has employee status." (internal citations and quotations omitted)). The Court agrees with the government.

The FLSA provides various protections for full- and part-time employees, including overtime pay for employees who work for employers that fall within the Act's coverage. Importantly, the FLSA's protections only apply to "employees" employed by "employers" as those terms are defined in the Act. *See* 29 U.S.C. § 207. There is no dispute in this case that VOA (and the federal government generally) is an "employer" and thus subject to the FLSA. Instead, the parties dispute whether Plaintiff is an "employee." Rather unhelpfully, the FLSA defines the term "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). In order to fill in the gaps left by this definition, Plaintiff urges the Court to turn to the economic realities test to determine whether he qualifies as an employee despite the fact that he has worked under a series of purchase order agreements. *See* 2d. Am. Compl. ¶¶ 20, 75, 76, 94.

The economic realities test is a judicially-created test used to determine whether a person who has not been classified as an employee does work of such a character and quality that he or she should in fact be classified as an employee. *See, e.g.*, *Williams v. Henagan*, 595 F.3d 610, 620 n.15 (5th Cir. 2010) ("The test stems from a series of Supreme Court cases rejecting the common-law understanding of 'employee' and 'independent contractor' in the context of the National Labor Relations Act, the Social Security Act, and the FLSA. In the FLSA context, the Court ruled in *Goldberg v. Whitaker House Coop., Inc.,* 366 U.S. 28, 33 (1961), that 'economic reality rather than technical concepts is to be the test of employment.'"). There appears to be some variance in the factors considered by courts in applying the economic realities test; however, under the version proffered by Plaintiff, the Court is to consider: "1) right to control; 2) opportunity for profit or loss; 3) investment in equipment or materials required for employment; 4) the degree of skill required; 5) the degree of permanency and duration of the working relationship; and 6) the extent to which the service rendered is an integral part of the employer's business." Pl.'s Resp. at 16–17 (citing *Pendleton v. JEVS Hum. Servs., Inc.*, 463 F. Supp. 3d 548, 561 (E.D. Pa. 2020)).

According to Plaintiff, his work relationship with VOA easily meets the economic realities test. In support of this, Plaintiff alleges, *inter alia*, that he did not provide his own equipment, 2d. Am. Compl. ¶¶ 35, 77, was "on-call" and unable to set his own hours, *id.* ¶ 37, and worked more than forty hours a week without premium or overtime pay, *id.* ¶ 38. In addition, he asserts that "USAGM was aware, at minimum, in June 2014 that the purchase order agreements it entered into with Plaintiff . . . created an employee-employer relationship when [] the OIG audit explicitly told it as much. Yet, USAGM did nothing to convert Plaintiff's . . . independent contracting status to full-time employment." *Id.* ¶ 86.

The government counters that whether Plaintiff is able to satisfy the economic realities test is irrelevant to the inquiry because that test does not apply when assessing whether an individual is a federal employee. Rather, according to the government, "[b]ased on . . . well-established precedent, courts have correctly concluded that only those who are appointed or are hired pursuant to specific Congressional authority creating an employer-employee relationship are Federal employees under the FLSA." Def.'s Mot. Dismiss at 15. Thus, the government argues that because the complaint does not allege Plaintiff was appointed as a federal employee or that he was hired pursuant to specific congressional authorization creating an employment relationship, Plaintiff fails to state a claim. *See id.*

The Court concurs with the government. Recall that in order to be entitled to the FLSA's benefits, one must be an employee, *see* 29 U.S.C. § 203(e)(1), and that an "individual employed by a public agency" is separately defined under the Act so as to distinguish it from the more general term "employee," *compare* 29 U.S.C. § 203(e)(2)(A) *with* 29 U.S.C § 203(e)(1) ("*Except as provided in paragraph[] (2)* . . . the term 'employee' means any individual employed by an employer." (emphasis added)). The relevant inquiry for this case then is whether Plaintiff qualifies as a *federal* employee. In other words, may a plaintiff present a set of facts that would make him a *de facto federal* employee through application of the economic realities test? The answer to both questions is no.

As stated above, the economic realities test is a judicially-created doctrine that looks to "economic reality rather than technical concepts" as "the test of employment." *Goldberg*, 366 U.S. at 33. Application of that test to federal employment, however, is not workable as "technical concepts," such as appointment, are crucial to determining whether an individual is a federal employee. All federal employees derive the benefits and burdens of their positions from appointment. *See, e.g.*, *Chu v. United States*, 773 F.2d 1226, 1229 (Fed. Cir. 1985). This is crucial, as "the question of appointment, by itself, controls the question of whether an individual is an 'employee' for the purpose of civil service." *Watts v. Off. Personnel Mgmt.*, 814 F.2d 1576, 1579–80 (Fed. Cir. 1987). Moreover, "[t]he status of 'employee' requires unequivocal intention to bring an individual within the civil service." *Id.* This is because, unlike private employment, "federal workers' rights are defined by Title V and not by contract, the common law, or other statutes not specifically made applicable to federal workers." *Griffin v. Sec'y of Health and Hum. Servs.*, 124 Fed. Cl. 101, 106 (2014); *see also Doe v. United States*, 513 F.3d 1348, 1359 (Fed. Cir. 2008) ("[F]ederal employee benefits and pay are governed by statute, not by contract.").

Plaintiff nevertheless asserts that the common law economic realities test should apply to the federal government in lockstep with the private sector. That cannot occur without defying over forty years of established circuit precedent. The Court of Claims, the Federal Circuit, and this Court have continuously affirmed the principle that appointment is a *sine qua non* of federal employment. In *Baker v. United States*, the Court of Claims stated that in order for a worker to be considered a federal employee, he or she must meet "[a]ll three tests of this statutory definition, i.e., federal appointment, federal supervision, and federal function." 222 Ct. Cl. 263, 268 (1980). The *Baker* court went on to hold that, without appointment, the remainder of the inquiry is irrelevant. *Id.* The Federal Circuit has observed in later cases that there is a "significant degree of formality in the appointment process," *Horner v. Acosta*, 803 F.2d 687, 692 (Fed. Cir. 1986), and has delineated formalities that indicate someone has been appointed into the federal civil service. Examples of these formalities include execution of Standard Form 50 or 52, *see Watts*, 814 F.2d at 1580; *Horner*, 803 F.2d at 692–94; *Bevans v. Off. Personnel Mgmt.*, 900 F.2d 1558, 1562 (Fed. Cir. 1990), extensive paperwork, *see Guevara v. I.N.S.*, No. 90–1476, 1992 WL 1029, at *2 (Fed. Cir. Jan. 6, 1992), withholdings from the employee's salary for the civil servant retirement fund, *see Bevans*, 900 F.2d at 1563, and administration of an oath, *Horner*, 803 F.2d at 694; *Watts*, 814 F.2d at 1579. Perhaps most telling, however, is that even in the presence of those indicia the Court of Claims and the Federal Circuit have explicitly rejected a "totality of the circumstances" approach, as "[a]n abundance of federal function and supervision will not make up for the lack of appointment." *Horner*, 803 F.2d at 693 (internal

quotations omitted) (quoting *Costner v. United States*, 229 Ct. Cl. 87, 94 (1981)); *see also Bevans*, 900 F.2d at 1564 (rejecting the argument that administration of the oath of office set out in 5 U.S.C. § 3331 was an indicator of appointment to federal service because "even if [the court] assume[s] [plaintiff] was given the oath of office, the administration of an oath would not itself establish that [plaintiff] was appointed in the civil service"). This is because "definite, unconditional action by an authorized federal official designating an individual to a *specific civil service position* is necessary to fulfill the appointment requirement of 5 U.S.C. § 2105(a)," and federal function and supervision are not sufficient decisive action. *Horner*, 803 F.3d at 693 (emphasis added). This means that it is not enough for an independent contractor to occupy a post at an agency. There must be a corresponding action that intentionally brings him or her into federal service: appointment. *Baker*, 222 Ct. Cl. at 266.

Even if Plaintiff could successfully argue that he has met the latter two *Baker* prerequisites for federal employment (federal supervision and function), he has not alleged that he was appointed, or even constructively appointed, which is required for him to state a claim. As the applicable caselaw makes clear, there is no federal employment without appointment. *See, e.g.*, *Costner*, 229 Ct. Cl. at 94. The complaint alleges many facts that, if Plaintiff was alleging employment by a private employer, would be pertinent to the economic realities test. *See* 2d. Am. Compl. ¶ 29 ("Plaintiff was told when to arrive at work . . . . what audio systems he would operate . . . ."); *id.* ¶ 33 ("Plaintiff was consistently directed to complete [] non-contracted for tasks . . . ."); *id.* ¶ 35 (stating that "plaintiff was never required to provide any equipment to complete his tasks"). However, the economic realities test can only prove *constructive* employment. In other words, the nature of the economic realities test is that a court looks at the quality and character of conduct an employee engages in and determines as a matter of law whether or not there is such a degree of control that the person cannot be fairly characterized as an independent contractor. *See Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) ("Because the statute defines employer in such broad terms, it offers little guidance on whether a given individual is or is not an employer. In answering that question, the overarching concern is whether the alleged employer possessed the power to control the workers in question . . . ."). That is not the case with federal employment, which cannot occur "in a passive manner without appointment." *Watts*, 814 F.2d at 1580.

This difference is exemplified by the Federal Circuit's decision in *Guevara v. Immigration and Naturalization Service*, No. 90–1476, 1992 WL 1029, at *2 (Fed. Cir. Jan. 6, 1992). In that case, inmates who worked voluntarily and were paid one dollar a day asserted that they "must be paid in accordance with the minimum wage requirements" of the FLSA. *Guevara v. I.N.S.*, 1992 WL 1029, at *1. The circuit rejected this proposition and, in upholding the district court's decision that the FLSA did not apply to the plaintiffs, noted that the plaintiffs had failed to plead "any basis for their entitlement to the status of federal employees." *Id.* In part, this is because "[w]hatever the category, an individual is not considered to be a federal government employee until he or she has been properly appointed as an employee of the Government," which involves appointment by a person who is authorized to do so. *Id.* at *2.

In the instant case, Plaintiff has failed to allege that he was appointed by someone with the authority to do so at the agency. *See generally* 2d. Am. Compl. Rather, as stated above, the allegations relate almost entirely to the contracted for agreement between Plaintiff and VOA and

their conduct while under said agreements. *Id.* Thus, Plaintiff's complaint does not allege any facts that, assumed as true, indicate formal action that would demonstrate his constructive appointment. That makes sense considering Plaintiff attempts to apply a common law rule that is diametrically opposed to the stringent and formal requirements of federal employment. *See Horner*, 803 F.2d at 692 ("The precedents binding on this court have required that there be a significant degree of formality in the appointment process."). The economic realities test fills the gap that Congress left in defining private sector employers and employees, whereas the Act delineates and more specifically defines what constitutes a federal employee.[2] This is likely because, in drafting the Act, Congress was aware of the formalities that coincide with federal employment. *Compare* 29 U.S.C. § 203(e)(2)(A) *with* 29 U.S.C § 203(e)(1); *see also Griffin*, 124 Fed. Cl. at 106 ("[W]hen a statute limits its applicability, at least in part, to only United States employees, we presume that Congress had in mind the definition of a federal employee from the statutes that govern them.").

The Court finds Judge Tapp's reasoning in *Diaz v. United States*, 156 Fed. Cl. 270 (2021), both helpful and on point. In *Diaz*, Judge Tapp addressed the case of an independent contractor who served as a mail carrier for the United States Postal Service. *See* 156 Fed. Cl. at 273. The plaintiff in that case brought a complaint alleging, *inter alia*, that he was improperly classified as an independent contractor because "he performed essentially the same tasks as employee mail carriers." *Id.* at 275. Judge Tapp held that the plaintiff was properly classified as an independent contractor and not a federal employee. *Id.* at 274. In doing so, he noted that whether or not someone is a federal employee is "a legal question, not a factual allegation," and thus "a plaintiff cannot assert by merely pleading, in a conclusory fashion, that he has employee

---

[2] Federal employees did not become entitled to the FLSA's protections until the 1974 amendments to the FLSA. *See* 88 Stat. 58. Those amendments extended the FLSA's protections to individuals employed by a public agency, which includes

> (A) any individual employed by the Government of the United States—
>
> (i) as a civilian in the military departments (as defined in section 102 of Title 5),
>
> (ii) in any executive agency (as defined in section 105 of such title),
>
> (iii) in any unit of the judicial branch of the Government which has positions in the competitive service,
>
> (iv) in a nonappropriated fund instrumentality under the jurisdiction of the Armed Forces,
>
> (v) in the Library of Congress, or
>
> (vi) the Government Publishing Office;

29 U.S.C. § 203(e)(2)(A). The cross-referenced definition to an "executive agency" defines the term as "an Executive department, a Government corporation, and an independent establishment." 5 U.S.C. § 105. The parties do not dispute that VOA is a public agency as defined in 29 U.S.C § 203(e)(2)(A).

status." *Id.* at 275 (internal quotations and citations omitted). Moreover, Judge Tapp rejected application of the economic realities test, despite the plaintiff's urging, because

> the use of the economic realities test, or any balancing test for that matter, would be a misapplication of the law as it relates to federal employees. . . . The Federal Circuit imposes a "well-established principle that, absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government."

*Id.* at 276 (quoting *Harrison v. United States*, 120 Fed. Cl. 533, 544–45 (2015). Additionally, he noted that the plaintiff had failed to allege appointment and the fact that the plaintiff "executed multiple agreements over the course of several years containing the apparent mutual understanding that he was an independent contractor" further demonstrated that the plaintiff was in fact an independent contractor rather than a federal employee. *Diaz*, 156 Fed. Cl. at 276.

Many of the facts that proved dispositive in *Diaz* are present in this case as well. Plaintiff has not alleged facts that suggest appointment, and, instead, he has relied on the economic realities test to attempt to bridge that gap. As explained above and articulated in *Diaz*, for federal employees the economic realities test is not a substitute for appointment. Furthermore, the fact that Plaintiff entered into an essentially identical contract seventeen times over the last seventeen years, 2d. Am. Compl. ¶ 27, that explicitly states that "no employer employee relationship exists" between Plaintiff and the government, *id.* ¶ 25, strongly indicates that there was a "mutual understanding" that Plaintiff is an independent contractor. *Diaz*, 156 Fed. Cl. at 276 (finding that the presence of multiple agreements that spanned several years indicated an understanding that the plaintiff was an independent contractor).

The Federal Circuit has explicitly stated that "absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government." *Chu*, 773 F.2d at 1229. Although a significant portion of Plaintiff's opposition to the government's motion addresses what the agency *could* have done in terms of appointing him, there is no allegation that Plaintiff was hired pursuant to any specific authority that would entitle him to a remedy under the FLSA. *See generally* 2d. Am. Compl. In short, the only way the Court could find in favor of Plaintiff would be to ignore binding circuit precedent. Moreover, the ramifications of such a finding would be enormous, as the Federal Circuit summarized in *Watts v. Office of Personnel Management*. In that case, the circuit considered whether a pilot employed by a proprietary Central Intelligence Agency corporation was entitled to civil service retirement benefits. *See Watts*, 814 F.2d at 1578. There, the plaintiff argued that "the circumstances as a whole indicate the intention to appoint [plaintiff] to the civil service." *Id.* at 1580. In holding that the plaintiff was not a civil servant, the circuit observed that

> [t]he position urged by Watts would create a new category of employees who, without formal appointment or even awareness of the government's role when employed, would become "appointed" civil servants, in numbers unknown, and without thought as to their effect on actuarial soundness of the retirement fund. The

> implications of Watts' position might extend further to cover employees of corporations, privately owned, yet primarily producing goods or services for the government. We conclude that, in the absence of formal or even intended appointment, Watts is not an "employee" for the purposes of the civil service system.

*Id.* at 1579. Plaintiff's proffered position creates the same issue: a litany of employees in numbers unknowable that would be entitled to the benefits and burdens of federal employment without definitive action by the government.

As demonstrated throughout the above, Plaintiff's arguments are entirely foreclosed by the requirements regarding the creation of federal employment and binding Court of Claims and Federal Circuit precedent applying those requirements. Because Plaintiff's complaint does not allege a scintilla of evidence that would indicate to this Court that he was appointed, he has not as a matter of law sufficiently alleged that he is a federal employee. Therefore, he fails to state a claim under Counts I and II upon which the Court can grant relief.

**3. The Court Lacks Jurisdiction over Count III Because It Requests Declaratory Relief That Is Not Incident and Collateral to a Claim within the Court's Jurisdiction**

Finally, Count III of Plaintiff's complaint requests relief in the form of a declaration "that at all times while working for Defendant, [Plaintiff and other potential class members] were improperly misclassified and should have been classified as employees instead of independent contractors, pursuant to the FLSA." 2d. Am. Compl. ¶ 91. As Judge Lettow explained in *Land of Lincoln Mutual Health Insurance Company*, 129 Fed. Cl. 81 (2016), this Court has jurisdiction to grant declaratory or other equitable relief in three circumstances:

> First, the court may "issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records" as an "incident of and collateral to" a monetary judgment. 28 U.S.C. § 1491(a)(2). Second, the court has jurisdiction to hear nonmonetary disputes arising under the Contract Disputes Act, 28 U.S.C. § 1491(a)(1) (last sentence), and third, it has juridical power to grant equitable relief in bid protests. 28 U.S.C. § 1491(b)(2).

129 Fed. Cl. at 99; *see also Manuel v. United States*, 115 Fed. Cl. 105, 114–15 (2014) (collecting cases). As this case is neither a Contract Disputes Act claim nor a bid protest, in order for the Court to be empowered to grant declaratory relief, there must be a claim that on the merits entitles Plaintiff to a monetary judgment. *See Faison v. United States*, 102 Fed. Cl. 637, 643 (2012). As explained above, Plaintiff fails to state a monetary claim upon which relief may be granted; therefore, the Court does not have jurisdiction over Plaintiff's request for declaratory relief and grants the government's motion to dismiss Count III.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the government's motion to dismiss. The Clerk **SHALL** enter judgment accordingly.

**IT IS SO ORDERED**.

s/ Zachary N. Somers
ZACHARY N. SOMERS
Judge

# In the United States Court of Federal Claims

**No. 21-1447 C**
**Filed: September 20, 2022**

**JASON LAMBRO**

**v.** **JUDGMENT**

**THE UNITED STATES**

Pursuant to the court's Opinion and Order, filed September 20, 2022, granting defendant's motion to dismiss,

IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 58, that plaintiff's complaint is dismissed for lack of subject-matter jurisdiction and for failure to state a claim upon which relief may be granted.

Lisa L. Reyes
Clerk of Court

By: s/ Debra L. Samler

Deputy Clerk

NOTE: As to appeal to the United States Court of Appeals for the Federal Circuit, 60 days from this date, see RCFC 58.1, re number of copies and listing of all plaintiffs. Filing fee is $505.00.