No. 2022-2249

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

---

JASON LAMBRO, Individually And On Behalf Of Similarly Situated Individuals,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

---

Appeal from the United States Court of Federal Claims
Case No. 21-cv-1447, Judge Zachary Somers

---

**BRIEF FOR DEFENDANT-APPELLEE**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

ERIC P. BRUSKIN
Assistant Director

MATTHEW J. CARHART
Trial Attorney
Civil Division, U.S. Dept. of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-0313

February 9, 2023                    *Attorneys for Defendant-Appellee*

# TABLE OF CONTENTS

STATEMENT OF THE ISSUE.................................................................1

STATEMENT OF THE CASE...............................................................1

   I.   Nature Of The Case ...................................................................1

   II.  Statement Of Facts And Course Of Proceedings Below ...............................2

      A.   The Operative Complaint ......................................................2

      B.   The Trial Court Dismisses Mr. Lambro's Complaint...............................7

SUMMARY OF THE ARGUMENT ....................................................10

ARGUMENT ...................................................................................12

   I.   Jurisdiction And Standard Of Review .........................................12

      A.   Dismissal Pursuant To Rule 12(b)(1).......................................12

      B.   Dismissal Pursuant To Rule 12(b)(6).......................................14

   II.  The Court Of Federal Claims Correctly Dismissed The Complaint For Failure To State A Claim.................................................................15

      A.   The Legal Framework Governing The FLSA...........................15

      B.   An "Employee" Of The Federal Government Under The FLSA Must Be Appointed Or Hired Pursuant To Specific Congressional Authority Creating An Employment Relationship .................................................18

         1.   Federal Employees Must Either Be Appointed Or Hired Pursuant To Specific Statutory Authority .................................................18

         2.   Congress Did Not Depart From The Longstanding Principles Governing Federal Employment When It Defined Federal "Employee" In The FLSA .......................................................................23

         3.   Precedent Interpreting The FLSA Supports The Trial Court's Construction.................................................................31

         4.   Mr. Lambro's Reliance On Precedent Interpreting Other Statutory Schemes And On Policy Considerations Is Misplaced ..................33

      C.   Because He Was Neither Appointed Nor Hired Pursuant To Specific Authority, Mr. Lambro Is Not A Federal "Employee" Under The FLSA........38

   III.  The Trial Court Correctly Held That It Does Not Possess Jurisdiction To Award Declaratory Relief...............................................................39

CONCLUSION ...............................................................................40

# TABLE OF AUTHORITIES

Page(s)

*Cases*

*Abbey v. United States*,
   745 F.3d 1363 (Fed. Cir. 2014) ........................................................29

*Adams v. United States*,
   391 F.3d 1212 (Fed. Cir. 2004) ........................................................21

*Anderson v. Mt. Clemens Pottery Co.*,
   328 U.S. 680 (1946) ........................................................................17

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ............................................................... 14, 15

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................. 14, 15

*Billings v. United States*,
   322 F.3d 1328 (Fed. Cir. 2003) ................................................. 20, 25

*Butler v. Pa. Canal Comm'n*,
   51 U.S. (10 How.) 402 (1850)..........................................................19

*Cannon v. Univ. of Chicago*,
   441 U.S. 677 (1979) ........................................................................25

*Chu v. United States*,
   773 F.2d 1226 (Fed. Cir. 1985) ................................................... 8, 21

*Coleman v. United States*,
   100 Ct. Cl. 41 (1943)........................................................................29

*Costner v. United States*,
   665 F.2d 1016 (Ct. Cl. 1981).............................................................38

*Coulibaly v. Tillerson*,
   273 F. Supp. 3d 16 (D.D.C. 2017)................................................ 36, 37

*Creative Compounds, LLC v. Starmark*,
   *Lab.*, 651 F.3d 1303 (Fed. Cir. 2011).................................................14

*Dep't of Energy and Bonneville Power Administration*,
   No. 3:15-cv-02216-HZ, 2018 WL 2090604 (D. Or. April 30, 2018) .................36

*Diaz v. United States*,
   156 Fed. Cl. 270 (2021)........................................................... 9, 20, 32

*Doe v. United States*,
   513 F.3d 1348 (Fed. Cir. 2008) ................................................. 26, 34

*Dysart v. United States*,
   369 F.3d 1303 (Fed. Cir. 2004) ................................................. 28, 30

iii

*Fisher v. United States*,
    402 F.3d 1167 (Fed. Cir. 2005) .................................................. 14, 29

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust*,
    463 U.S. 1 (1983) ................................................................12

*Ganse v. United States*,
    180 Ct. Cl. 183 (1967) .......................................................... 21, 29

*Godwin v. United States*,
    338 F.3d 1374 (Fed. Cir. 2003) ..................................................14

*Goutos v. United States*,
    212 Ct. Cl. 95 (1976) ..............................................................23

*Griffin v. Sec'y of Health and Hum. Servs.*,
    124 Fed. Cl. 101 (2014) ....................................................... 9, 10, 25

*Guevara v. INS*,
    No. 90-1476, 1992 WL 1029 (Fed. Cir. Jan. 6, 1992) ..................... 8, 19, 31, 32

*Hamlet v. United States*,
    63 F.3d 1097 (Fed. Cir. 1995) .............................................. 21, 26, 27

*Hewlett-Packard Co. v. Acceleron LLC*,
    587 F.3d 1358 (Fed. Cir. 2009) ..................................................14

*Holley v. United States*,
    124 F.3d 1462 (Fed. Cir. 1997) ..................................................12

*Hopkins v. United States*,
    513 F.2d 1360 (Ct. Cl. 1975) .....................................................21

*Horner v. Acosta*,
    803 F.2d 687 (Fed. Cir. 1986) ....................................................20

*Hurley v. Fuchs*,
    Civ. No. 20-850 KG/GBW, 2021 WL 4290134 (D.N.M. Sept. 21, 2021) .........36

*Integrity Staffing Sols, Inc. v. Busk*,
    135 S. Ct. 513 (2014) .............................................................17

*Jackson v. Modly*,
    949 F.3d 763 (D.C. Cir. 2020).......................................... 24, 34, 35, 36

*Kania v. United States*,
    227 Ct. Cl. 458 (1981).............................................................21

*Karahalios v. Nat'l Fed'n of Fed. Emp., Local,
    1263*, 489 U.S. 527 (1989) ......................................................19

*King v. Dalton*,
    895 F. Supp. 831 (E.D. Va. 1995) ................................................36

*Lees v. Evans*,
    31 Fed. App'x 680 (Fed. Cir. 2002) .......................................... 18, 20

*Lopez v. Johnson*,
    333 F.3d 959 (9th Cir. 2003) ....................................................36

*McDermott Intern., Inc. v. Wilander,*
  498 U.S. 337 (1991) ...........................................................24
*Morgan v. Principi,*
  327 F.3d 1357 (Fed. Cir. 2003) ........................................24
*Pine Hill Coal Co. v. United States,*
  259 U.S. 191 (1922) ...........................................................22
*Price v. United States,*
  112 Ct. Cl. 198 (1948) ................................................. 21, 29
*Raney v. Fed. Bureau of Prisons,*
  222 F.3d 927 (Fed. Cir. 2000) ..........................................24
*Rutherford Food Corp. v. McComb,*
  331 U.S. 722 (1947) ...........................................................16
*Schellfeffer v. United States,*
  343 F.2d 936 (Ct. Cl. 1965)...............................................22
*Seh Ahn Lee v. United States,*
  895 F.3d 1363 (Fed. Cir. 2018) ......................... 5, 7, 8, 39
*Sibbald v. Johnson,*
  294 F. Supp. 2d 1173 (S.D. Cal. 2003) .............................36
*SmithKline Beecham Corp. v. Apotex Corp.,*
  439 F.3d 1312 (Fed. Cir. 2006) ........................................39
*Spirides v. Reinhardt,*
  613 F.2d 826 (D.C. Cir. 1979)................................ 33, 34, 35
*Steelman v. Hirsch,*
  473 F.3d 124 (4th Cir. 2007) ............................................16
*Tetzlaff v. United States,*
  No. 15-161C, 2015 WL 7585333 (Fed. Cl. Nov. 25, 2015) ...............................32
*United States v. Mitchell,*
  445 U.S. 535 (1980) ...........................................................13
*United States v. Mitchell,*
  463 U.S. 206 (1983) ...........................................................29
*United States v. Nordic Village, Inc.,*
  503 U.S. 30 (1992) .............................................................13
*United States v. Testan,*
  424 U.S. 392 (1976) .................................................. passim
*Watts v. OPM,*
  814 F.2d 1576 (Fed. Cir. 1987) ........................................22
*Whitman v. Am. Trucking Ass'n,*
  531 U.S. 457 (2001) ...........................................................28
*Wilson v. MVM, Inc.,*
  No. CIV.A.03-4514, 2004 WL 1119926 (E.D. Pa. May 18, 2004) ...................36

*Zafer Construction Company v. United States*,
  40 F.4th 1365 (Fed. Cir. 2022) ............................................................15
*Zumerling v. Devine*,
  769 F.2d 745 (Fed. Cir. 1985) ...............................................................27

*Statutes*

5 U.S.C. § 2105(a) ................................................................... 18, 20
10 U.S.C. § 1552 .............................................................................30
20 U.S.C. § 1681(a) ......................................................................34
28 U.S.C. § 1491 .............................................................................13
29 U.S.C. § 203(e) ................................................................. passim
29 U.S.C. § 207(a) .........................................................................15
29 U.S.C. § 251 .............................................................................17
42 U.S.C. 2000e-16(a) ..................................................................35
42 U.S.C. § 2000e-2 .....................................................................34
42 U.S.C. § 3604 ...........................................................................34

*Regulations*

5 C.F.R. § 551.101 .........................................................................17
5 C.F.R. § 551.103 .........................................................................18
5 C.F.R. § 551.104 .........................................................................17
48 C.F.R. § 37.104 ............................................................ 5, 18, 39

*Other Authorities*

1974 U.S.C.C.A.N. 2811 ..............................................................27

## <u>STATEMENT OF COUNSEL</u>

Pursuant to Rule 47.5 of this Court's Rules, counsel for respondent-appellee is unaware of any other appeal from this civil action that previously was before this Court or any other appellate court under the same or similar title.  Counsel is also unaware of any case pending in this or any other court that may directly affect or be affected by this Court's decision in this appeal.

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

| | | |
|---|---|---|
| JASON LAMBRO, Individually And On Behalf Of Similarly Situated Individuals, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 2022-2249 |
| UNITED STATES, | ) ) | |
| Defendant-Appellee. | ) ) ) | |

## BRIEF FOR DEFENDANT-APPELLEE

_____

## STATEMENT OF THE ISSUE

Whether a Federal contractor who (i) was not appointed to a Federal position and (ii) was not hired as an employee pursuant to Congressional authority plausibly alleged that he was an "employee" of the Federal Government under the Fair Labor Standards Act (FLSA).

## STATEMENT OF THE CASE

### I.    Nature Of The Case

Jason Lambro alleges that the United States violated the FLSA by not classifying him as a Federal "employee" when he was a contractor for the U.S. Agency for Global Media (USAGM or agency).  He sued in the United States Court of Federal Claims in *Lambro v. United States*, No. 21-1447, on behalf of

1

himself and a purported collective of similarly situated individuals.  The trial court dismissed Mr. Lambro's FLSA claim for failure to state a claim because he had not plausibly alleged that he was an "employee" of the Federal Government under the FLSA, and further held that it lacked jurisdiction to grant Mr. Lambro's request for declaratory relief.  Appx000001-Appx000011.  Mr. Lambro appeals the trial court's decision.

## II.     Statement Of Facts And Course Of Proceedings Below

### A.     The Operative Complaint

Mr. Lambro originally sued in the District Court for the District of Columbia on January 28, 2021.  Appx000002.  He moved subsequently to transfer his case to the Court of Federal Claims, and the district court granted his motion.  *Id.*  Mr. Lambro then filed a transfer complaint before the Court of Federal Claims, which he styled as the "amended complaint," on June 17, 2021.  *Id.*  Mr. Lambro then filed an amended complaint, which he styled as the "second amended complaint," on November 5, 2021.  *Id.*  The second amended complaint is the operative complaint in this appeal.

In the operative complaint, Mr. Lambro alleges that he entered into a contract to work for the agency, a broadcaster that "provid[es] news, information, and cultural programming via internet, mobile and social media, radio, and television."  Appx000017 (¶ 23).  In 2002, Mr. Lambro began working as a studio

2

technician within the agency's Television Operations / TV Studio Service department. *Id*. (¶ 24). Mr. Lambro alleges that he entered into a purchase order agreement with the agency in 2002. *Id.* (¶ 25). According to the complaint, the purchase order agreement was renewed annually, and did not change substantively over the course of the time it was in effect. Appx000018 (¶ 27). The complaint acknowledges that "[t]he express terms in the purchase order agreement provide ostensible independence to Plaintiff in determining the manner and means of work." *Id.* (¶ 28). The purchase order agreement requires that work materials be submitted at least one hour prior to their use, and it sets forth an approval process for subcontracting work that the agency assigns. Appx000017-000018 (¶ 25). In the blanket purchase agreement, which was attached as an exhibit to the second amended complaint, Mr. Lambro "agrees that no employer-employee relationship exists" between himself and the agency. Appx000036.

Mr. Lambro further alleges that his duties and responsibilities were set forth in a statement of work. Appx000018 (¶ 26). This statement of work required Mr. Lambro to "provide general studio operation service utilizing Government equipment on-site at the [agency's] office[.]" *Id.* His responsibilities as a studio technician "include[d] the operation of studio audio equipment, video device playback equipment, and the ability to perform the duties associated with a Studio Technician I." *Id.*

Notwithstanding the "ostensible independence" recognized in the purchase

order agreement, Mr. Lambro alleges that "in practice, Defendant significantly

controlled and continues to control the timing and management of Plaintiff's

work." Appx000018 (¶ 28). For example, he alleges that he was required to

perform audio-mixing tasks in a different department than specified in the purchase

order agreement. *Id.* Mr. Lambro also alleges that the agency provided all of the

equipment that he used; that the agency decided what days and hours he worked;

that he was not aware of what his specific tasks would be on a particular day; that

he was required to come into the office to check what his schedule would be; and

that he was required to remain "on-call at all times" in case he was needed at the

office. Appx000020 (¶¶ 35, 37).

In early 2018, according to the complaint, Mr. Lambro created Wayne

Industries "to contract with VoA[1] and take advantage of the available corporate tax

breaks." Appx000021 (¶ 42). Mr. Lambro alleges that the agency agreed to

contract with Wayne Industries using "contractual terms virtually identical" to the

purchase order agreement between the agency and Mr. Lambro. *Id.* Mr. Lambro

further alleges that he was "constructively barred from hiring workers to fulfill

[his] obligations under the contract without seeking approval from a significant

---

[1] "VoA" is an acronym for "Voice of America," a broadcaster that is overseen
by the U.S. Agency for Global Media.

4

number of USAGM higher-ups." Appx000022 (¶ 44). And he alleges that the agency "never treated [Wayne Industries] as a separate company." *Id.* (¶ 45).

Mr. Lambro thus asserts that the agency "willfully misclassified" him and other unnamed collective action members as independent contractors. Purportedly in support of this assertion, the complaint points to a June 2014 report written by the United States Department of State and the Broadcasting Board of Governors Office of Inspector General (OIG). Appx000023-000024 (¶ 53). Mr. Lambro alleges that, in 2014, "[i]n response to the OIG's audit, USAGM admitted that the contracts issued were personal services contracts creating an employee-employer relationship with the government as defined by 48 C.F.R. § 37.104." Appx000024 (¶ 54). The complaint does not identify the purported "admission" it is referring to.[2]

Mr. Lambro also makes allegations related to the putative collective. He alleges that the putative collective "consists of all persons who provided USAGM services under a contractual arrangement other than full-time employment." Appx000025 (¶ 61). He alleges that: (1) the collective consists of more than 100

---

[2] Of note, in a case brought by a group of contractors concerning this same OIG report, this Court explained that plaintiffs were incorrect when they made this same allegation in that case. *See Seh Ahn Lee v. United States*, 895 F.3d 1363, 1371 n.6 (Fed. Cir. 2018). The agency is not aware of any other basis for this allegation in Mr. Lambro's complaint, besides the one rejected in *Lee*.

individuals; (2) joinder is impractical; and (3) there are common questions of law and fact, including (a) whether he and putative collective members "provided USAGM personal services as provided under [Federal Acquisition Regulation] 37.104, thus creating an employer-employee relationship," (b) whether, alternatively, the putative collective members were "employees of USAGM pursuant to the 'economic realities' test," (c) whether the agency misclassified the putative collective members as independent contractors, and if so, whether that misclassification was willful or intentional, and (d) whether the putative collective members are entitled to unpaid compensation and damages under the FLSA. Appx000025-000026 (¶ 65).

The complaint contains three counts.  Count I asserts that the agency violated the FLSA by misclassifying Mr. Lambro and the putative collective members.  Appx000027 (¶ 72).  It further asserts that, under the "economic realities" test, Mr. Lambro and the putative collective members are employees. Appx000027-000029 (¶¶ 74-80).  In this regard, the complaint asserts that the agency "exercised significant control" over the schedules of Mr. Lambro and the putative collective members, by requiring them to be "on-call at all times," controlled what shows they could work on, required them to complete tasks that were not required under the contract, and provided all the equipment they used for their jobs.  Appx000028.

(¶ 77). It further asserts that Mr. Lambro and the putative collective members were prevented from profiting from their business (*id.* (¶ 78)), that their relationship with the agency was "permanent in nature" (*id.* (¶ 79)), and their work was "integral to the operation of" the agency (Appx000029 (¶ 80)).

Count II asserts that the agency's violation of the FLSA was willful because the agency was aware, based on the OIG's report, that its purchase order agreements created an employment relationship. Appx000029-000030 (¶ 86). Even so, the complaint asserts, the agency did "nothing to convert Plaintiff's or the [collective members'] independent contracting status to full-time employment." *Id.* It therefore asserts that the putative collective members are entitled to relief under the FLSA for the past three years. Appx000030 (¶ 88).

Count III seeks a declaratory judgment that Mr. Lambro and the putative collective members were misclassified under the FLSA. Appx000030-000031 (¶¶ 89-95).

B.    The Trial Court Dismisses Mr. Lambro's Complaint

On September 20, 2022, the trial court granted the United States' motion to dismiss Mr. Lambro's complaint in its entirety. Appx000001-000011.

To begin with, the trial court concluded that it did not possess jurisdiction to entertain claims that accrued before January 28, 2018, because such claims are

barred by the FLSA's statute of limitations.  Appx000004.  Mr. Lambro does not

challenge this holding on appeal.

The trial court then addressed whether Mr. Lambro had stated a claim under

the FLSA.  After setting out the relevant statutory language, the trial court

addressed Mr. Lambro's argument that, in ascertaining whether an individual is an

"employee" of the Federal Government, "the common law economic realities test

should apply to the federal government in lockstep with the private sector."

Appx000006.  The trial court rejected this argument in light of "established circuit

precedent" that has "continuously affirmed the principle that appointment is a *sine*

*qua non* of federal employment."  *Id.*  In arriving at this conclusion, the trial court

cited a host of cases from the Court of Claims, the Federal Circuit, and the Court of

Federal Claims holding that "absent specific legislation, federal employees derive

the benefits and emoluments of their positions from appointment rather than from

any contractual or quasi-contractual relationship with the government."

Appx000009 (quoting *Chu v. United States*, 773 F.2d 1226, 1229 (Fed. Cir.

1985)); *see generally* Appx000006-000007.  The trial court also relied on two

cases from this circuit holding that Federal contractors were not "employee[s]"

under the FLSA.  Appx000007 (discussing *Guevara v. INS,* No. 90-1476, 1992

WL 1029, at *2 (Fed. Cir. Jan. 6, 1992)); Appx000008-000009 (discussing *Diaz v. United States*, 156 Fed. Cl. 270 (2021)).

The trial court explained that, in injecting the economic realities test into the context of Federal employment, Mr. Lambro "attempts to apply a common law rule that is diametrically opposed to the stringent and formal requirements of Federal employment." Appx000008. This is not a reasonable approach to ascertaining Congress's intent, the trial court reasoned, because Congress was likely "aware of the formalities that coincide with federal employment" when it enacted the 1974 amendments to the FLSA. Appx000008 (citing *Griffin v. Sec'y of Health and Hum. Servs.*, 124 Fed. Cl. 101, 106 (2014)).

Applying these principles to Mr. Lambro's complaint, the trial court concluded that Mr. Lambro had not plausibly alleged that he was a Federal employee. The trial court explained that "[a]lthough a significant portion of Plaintiff's opposition to the government's motion addresses what the agency *could* have done in terms of appointing him, there is no allegation that Plaintiff was hired pursuant to any specific authority that would entitle him to a remedy under the FLSA." Appx000009. Accordingly, "[a]s demonstrated through the above, Plaintiff's arguments are entirely foreclosed by the requirements regarding the

creation of federal employment and binding Court of Claims and Federal Circuit precedent applying those requirements." Appx000010.

Finally, the trial court noted that Mr. Lambro had sought a declaration to the effect that he was misclassified under the FLSA. Appx000010. The trial court held that, because Mr. Lambro had not stated a monetary claim, it did not possess jurisdiction to award Mr. Lambro declaratory relief. *Id.*

## <u>SUMMARY OF THE ARGUMENT</u>

This case asks the Court to decide whether independent contractors who were never appointed as employees by the Federal Government or hired pursuant to other statutory authority creating an employment relationship can nevertheless plausibly allege that they were "employee[s]" of the Federal Government under the FLSA. Consistent with decades of jurisprudence, the trial court correctly answered this question in the negative and dismissed the complaint for failure to state a claim. This Court should affirm.

Mr. Lambro argues that the trial court erred when it declined to apply the economic realities test, which courts use to assess whether private sector workers are "employee[s]," to determine whether he plausibly alleged that he was a Federal employee under the FLSA. But the economic realities test has no place in matters of Federal employment. Under well-established principles recognized in a long line of this Court's and the Supreme Court's precedent, an

10

individual like Mr. Lambro is not entitled to the benefits of Federal employment in the absence of an appointment or specific legislation creating an employment relationship. Precedent interpreting the FLSA's definition of "employee" is in accord, uniformly supporting the trial court's rejection of Mr. Lambro's reliance on the economic realities test.

Nothing in the text or history of the FLSA suggests that this Court should reach a different result than the trial court. The fact that Congress exempted Federal employees from the FLSA's general definition of "employee," and separately defined Federal "employee" under the FLSA by reference to Title 5's definition of "employee," undermines any suggestion that Congress, when it amended the FLSA, intended to abrogate the well-established distinction between Federal and private sector employees. And although Mr. Lambro argues to the contrary, there is no basis for presuming that Congress was unaware of the long-standing requirements for Federal employment when it amended the FLSA to cover Federal employees.

Lacking support in the FLSA's text or history, or in precedent from this circuit, Mr. Lambro goes fishing for out-of-circuit precedent, but that expedition proves equally fruitless. At best, Mr. Lambro cites cases interpreting Title VII, but those cases do not address the "benefits and emoluments" of Federal employment and do not account for the distinctive

11

nature of Federal employment.  Even if the out-of-circuit caselaw he cites were on point, moreover, Mr. Lambro's arguments are undermined by subsequent precedent that he does not acknowledge.

Consequently, the trial court correctly dismissed Mr. Lambro's FLSA claims because he did not plausibly allege that he was appointed as a Federal employee or hired pursuant to specific legislation that created an employment relationship.  Likewise, because the trial court correctly dismissed his monetary claim, it correctly concluded that it did not possess jurisdiction to award the declaratory relief sought by Mr. Lambro.

## **ARGUMENT**

### I.    **Jurisdiction And Standard Of Review**

#### A.    Dismissal Pursuant To Rule 12(b)(1)

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed."  *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983)).

The United States is immune from suit unless it has specifically waived sovereign immunity.  *United States v. Testan*, 424 U.S. 392, 399 (1976). "Waivers of the Government's sovereign immunity, to be effective, must be

unequivocally expressed," *id.*, and its "consent to be sued must be construed

strictly in favor of the sovereign and not enlarge[d] . . . beyond what the language

requires." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992)

(cleaned up).

   The jurisdiction of the Court of Federal Claims is established and limited by

the Tucker Act.  *See* 28 U.S.C. § 1491.  The Tucker Act is a waiver of sovereign

immunity, and it thus must be strictly construed.  *See United States v. Mitchell*,

445 U.S. 535, 538 (1980).  The Act grants the Court of Federal Claims

"jurisdiction to render judgment upon any claim against the United States founded

either upon the Constitution, or any Act of Congress or any regulation of an

executive department, or upon any express or implied contract with the United

States, or for liquidated or unliquidated damages in cases not sounding in

tort."  28 U.S.C. § 1491(a)(1).  Moreover, "[t]o provide an entire remedy and to

complete the relief afforded by the judgment, the court may, as an incident of and

collateral to any such judgment, issue orders directing restoration to office or

position, placement in appropriate duty or retirement status, and correction of

applicable records, and such orders may be issued to any appropriate official of

the United States."  *Id.* § 1491(a)(2).

   The Tucker Act, however, is "only a jurisdictional statute; it does not create

any substantive right enforceable against the United States for money damages . . .

the Act merely confers jurisdiction upon it whenever the substantive right

exists." *Testan*, 424 U.S. at 398.  Thus, "a plaintiff must identify a separate

source of substantive law that creates the right to money damages." *Fisher v.*

*United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc).

     "This court reviews a grant or denial of a motion to dismiss for lack of

subject matter jurisdiction de novo." *Creative Compounds, LLC v. Starmark Lab.*,

651 F.3d 1303, 1309 (Fed. Cir. 2011) (quoting *Hewlett-Packard Co. v. Acceleron*

*LLC,* 587 F.3d 1358, 1361 (Fed. Cir. 2009)).

    B.    <u>Dismissal Pursuant To Rule 12(b)(6)</u>

     A motion to dismiss pursuant to Court of Federal Claims Rule 12(b)(6) for

failure to state a claim upon which relief may be granted is appropriate when the

plaintiff alleges facts that do not entitle him to a remedy.  *Godwin v. United*

*States*, 338 F.3d 1374, 1377 (Fed. Cir. 2003).  "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The allegations of the complaint must indicate to the court that there is more than

"a sheer possibility that the defendant has acted unlawfully." *Id.* at 1949.  A

complaint must be liberally construed, assuming the facts alleged in the

complaint are true. *Id.* at 1949-50.  However, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Id.* at 1949-50 (citing *Twombly*, 550 U.S. at 555). In performing its

analysis, a court should not place weight upon any assertions in the complaint

other than allegations of fact, because legal conclusions are not given deference.

*Iqbal*, 129 S. Ct. at 1949.

This Court "review[s] decisions to dismiss complaints under Rule 12(b)(6)

de novo." *Zafer Construction Company v. United States*, 40 F.4th 1365, 1367

(Fed. Cir. 2022).

## II.     The Court Of Federal Claims Correctly Dismissed The Complaint For Failure To State A Claim

Because Mr. Lambro did not plausibly allege that he was a Federal

"employee" under the FLSA, the trial court correctly dismissed the complaint.

### A.     The Legal Framework Governing The FLSA

The FLSA provides that

> [N]o employer shall employ any of his employees . . . for
> a workweek longer than forty hours unless such
> employee receives compensation for his employment in
> excess of the hours above specified at a rate not less than
> one and one-half times the regular rate at which he is
> employed.

29 U.S.C. § 207(a)(1). As a threshold matter, therefore, to bring a claim under this

provision, a plaintiff must plausibly allege (and ultimately prove) that he was an

"employee" under the statute. *See id.*

Courts have emphasized the lack of guidance in the FLSA as to what it means to be an "employee."  The FLSA provides that "[e]xcept as provided in paragraphs (2), (3), and (4), the term 'employee' means any individual employed by an employer."  29 U.S.C. § 203(e)(1).  Analyzing this definition, courts have explained that "[t]he [FLSA] itself provides little guidance on the term's meaning. It defines an employee as any individual employed by an employer . . . but this is completely circular and explains nothing."  *Steelman v. Hirsch*, 473 F.3d 124, 128 (4th Cir. 2007) (cleaned up).  "Consequently, 'there is in the Fair Labor Standards Act no definition that solves problems as to the limits of the employer-employee relationship under the Act.'"  *Id.* (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947)).

Congress amended the FLSA in 1974 so that "employee[s]" of the Federal Government are covered.  Unlike the FLSA's "completely circular" general definition of "employee," *see id.*, Congress's definition of Federal "employee" contains significantly more detail:

> (2) In the case of an individual employed by a public agency, such term means--
> (A) any individual employed by the Government of the United States--
> (i) as a civilian in the military departments (as defined in section 102 of Title 5),
> (ii) in any executive agency (as defined in section 105 of such title),
> (iii) in any unit of the judicial branch of the Government which has positions in the competitive service,

16

(iv) in a *nonappropriated* fund instrumentality under the jurisdiction of the Armed Forces,
(v) in the Library of Congress, or
(vi) the[1] Government Publishing Office . . . .

29 U.S.C. § 203(e)(2).  This appeal turns on how this definition applies to Federal contractors like Mr. Lambro.[3]

OPM has implemented this statute at 5 C.F.R. § 551.101 *et seq.*  These regulations define "employee" using language similar to the definition in the 1974 amendments to the FLSA.[4]  The regulations further provide as follows:

Any employee of an agency who is not specifically excluded by another statute is covered by the Act.  This

---

[3]  Plaintiffs who can prove that they are "employee[s]" under the statute must also carry their burden of proof on all elements of an FLSA claim to prevail.  *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946), *superseded by statute on other grounds*, 29 U.S.C. § 251, *as recognized in Integrity Staffing Sols, Inc. v. Busk*, 135 S. Ct. 513, 517-18 (2014).  The other elements are not at issue in this appeal because Mr. Lambro did not plausibly allege that he was an "employee" of the Federal Government.

[4]  *Compare* 5 C.F.R. § 551.104 ("'Employee' means a person who is employed— (1) As a civilian in an Executive agency, as defined in section 105 of title 5, United States Code; (2) As a civilian in a military department, as defined in section 102 of title 5, United States Code; (3) In a nonappropriated fund instrumentality of an Executive agency or a military department; (4) In a unit of the judicial branch of the Government that has positions in the competitive service; or (5) In the Government Printing Office.") *with* 29 U.S.C. § 203(e)(2) ("In the case of an individual employed by a public agency, such term means--(A) any individual employed by the Government of the United States--(i) as a civilian in the military departments (as defined in section 102 of Title 5),(ii) in any executive agency (as defined in section 105 of such title), (iii) in any unit of the judicial branch of the Government which has positions in the competitive service, (iv) in a nonappropriated fund instrumentality under the jurisdiction of the Armed Forces, (v) in the Library of Congress, or (vi) the Government Publishing Office. . . .").

> includes any person who is: (1) Defined as an employee in section 2105 of title 5, United States Code; (2) A civilian employee appointed under other appropriate authority; or (3) Suffered or permitted to work by an agency whether or not formally appointed.

5 C.F.R. § 551.103.[5]

### B. An "Employee" Of The Federal Government Under The FLSA Must Be Appointed Or Hired Pursuant To Specific Congressional Authority Creating An Employment Relationship

The trial court correctly held that the FLSA does not cover Federal contractors like Mr. Lambro. This holding is supported by the well-established principles governing Federal employment, the FLSA's text and history, and precedent. None of Mr. Lambro's arguments show otherwise.

#### 1. Federal Employees Must Either Be Appointed Or Hired Pursuant To Specific Statutory Authority

Congress was not writing on a blank slate when it extended the FLSA to "employee[s]" of the Federal Government in 1974. Rather, it was legislating

---

[5] In providing that "an employee of an agency" who is "[s]uffered or permitted to work by an agency whether or not formally appointed" is covered by the FLSA, the regulations are consistent with the principle that an "employee of an agency" who is not appointed can be an "employee" under the FLSA, so long as she is hired pursuant to Congressional authority creating an employment relationship. *See Lees v. Evans*, 31 Fed. App'x 680, 682 (Fed. Cir. 2002) (unpublished) (recognizing that personal services contracts create an employer-employee relationship); FAR 37.104 (same).

against the backdrop of longstanding principles emphasizing the distinctive nature

of Federal employment.

Courts have long recognized and protected Congress's prerogative in

managing the Federal workforce.  As the Supreme Court explained in an early

decision:

> [T]he appointment to and the tenure of an office created
> for the public use, and the regulation of the salary affixed
> to such an office . . . do not come within the import of the
> term *contracts*, or, in other words, the vested, private
> personal rights thereby intended to be protected. They are
> functions appropriate to that class of powers and
> obligations by which governments are enabled, and are
> called upon, to foster and promote the general good . . . .

*Butler v. Pa. Canal Comm'n*, 51 U.S. (10 How.) 402, 417 (1850).  More recently,

the Supreme Court has similarly recognized that "federal employment does not rest

on contract in the private sector sense."  *Karahalios v. Nat'l Fed'n of Fed. Emp.,

Local 1263*, 489 U.S. 527, 535 (1989).

As relevant here, Congress has exercised its authority to manage the Federal

workforce in two overarching ways.

*First*, it has carefully circumscribed the category of those who are

considered Federal employees.  "To determine who qualifies as a federal

government employee for various pay and benefit purposes the Congress has

enacted detailed legislation establishing various categories of employees."

*Guevara*, 1992 WL 1029, at *2.  Most significantly, under Title 5, Congress has

defined "employee" as an "officer and individual" who was "*appointed* in the civil service . . . ." 5 U.S.C. § 2105(a) (emphasis added).  In assessing whether an individual was in fact appointed as a Federal employee, "[t]he precedents binding on this court have required that there be a significant degree of formality in the appointment process." *Horner v. Acosta*, 803 F.2d 687, 692 (Fed. Cir. 1986). "[D]efinite, unconditional action by an authorized federal official designating an individual to a specific civil service position is necessary to fulfill the appointment requirement of 5 U.S.C. § 2105(a)." *Horner,* 803 F.2d at 693.  Although "a vast majority of all Federal employees[]" are hired pursuant to Title 5, *see Billings v. United States*, 322 F.3d 1328, 1334 (Fed. Cir. 2003), not all are.  In addition to Title 5, Congress has enacted other statutes that create employment relationships. *See, e.g., Diaz*, 156 Fed. Cl. at 276-77 (analyzing whether a contractor was hired as an employee pursuant to authority conferred to the United States Postal Service in title 39 of the U.S. Code); *Lees*, 31 Fed. App'x at 682 (recognizing that "personal services contractors" are employees of the Federal Government hired under Congressional authority).

    *Second*, and relatedly, Congress has limited the "benefits and emoluments" of Federal employment to those hired pursuant to express statutory authority (which typically requires appointment).  The Supreme Court made this connection explicit when it explained, shortly after the 1974 FLSA amendments were enacted,

that "the established rule is that one is not entitled to the benefit of a position until he has been duly appointed to it[.]" *Testan*, 424 U.S. at 402. This is consistent with Court of Claims decisions that had recognized the same principle before the 1974 amendments to the FLSA. *Ganse v. United States*, 180 Ct. Cl. 183, 186 (1967) ("It is a well-settled principle of law that Federal Government employees are entitled only to the salaries of positions to which they are appointed, regardless of the duties they actually perform."); *Price v. United States*, 112 Ct. Cl. 198, 200 (1948) (same). More recently, this Court has "stated that there is a 'well-established principle that, absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government.'" *Hamlet v. United States*, 63 F.3d 1097, 1101 (Fed. Cir. 1995) (quoting *Chu*, 773 F.2d at 1229); *see also, e.g., Adams v. United States*, 391 F.3d 1212, 1221 (Fed. Cir. 2004); *Kania v. United States*, 227 Ct. Cl. 458, 464-65 (1981).

This carefully calibrated framework promotes important policy interests. To begin with, it provides Congress with more flexibility than a system of contract-based employment in which earlier legislatures could create contractual rights that bind succeeding legislatures. *See Hopkins v. United States*, 513 F.2d 1360, 1365 n.5 (Ct. Cl. 1975), *aff'd in part, vacated in part by* 427 U.S. 123 (1976) ("The rationale for this 'appointed' status is that the Government must have the power to

change the agents who carry out the public duties, as well as the terms under which they work.").  Moreover, by carefully policing who can become a Federal employee, and then drawing a connection between employment status and the "benefits and emoluments" of Federal employment, Congress safeguards Treasury funds.  Because only those hired pursuant to the processes established by Congress are entitled to the "benefits and emoluments" of Federal employment, Congress can readily understand the budgetary impact of the "benefits and emoluments" it authorizes.  *See* Appx000009-000010 (rejecting approach that "would create a new category of employees who, without formal appointment or even awareness of the government's role when employed, would become 'appointed' civil servants, in numbers unknown, and without thought as to their effect on actuarial soundness of the retirement fund") (quoting *Watts v. OPM*, 814 F.2d 1576, 1579 (Fed. Cir. 1987)).  A totality-of-the-circumstances approach (like the economic realities test) to determining who is a Federal employee could impose significant (and not fully understood) liabilities on the Government, contrary to the general presumption that Congress speaks clearly when it imposes an obligation on the Treasury.  *See Pine Hill Coal Co. v. United States*, 259 U.S. 191, 196 (1922) ("A liability in any case is not to be imposed upon a Government without clear words."); *Schellfeffer v. United States*, 343 F.2d 936, 942 (Ct. Cl. 1965) (declining to adopt a position that would impose a large financial burden upon the Government "unless the words (or

22

intent) are plain"). Finally, by controlling who can act as a representative of the Federal Government, the system established by Congress promotes orderly administration. *See Goutos v. United States*, 212 Ct. Cl. 95, 99 (1976) ("To infer appointment under these facts"—that is, without an executed Standard Form 52— "could easily bring about chaos in government personnel management.").

Courts have thus consistently limited eligibility for the benefits of Federal employment to those who have been appointed or hired pursuant to specific Congressional legislation that creates an employment relationship.

> 2. Congress Did Not Depart From The Longstanding Principles Governing Federal Employment When It Defined Federal "Employee" In The FLSA

Mr. Lambro argues that the 1974 amendments to the FLSA severed the connection between (1) appointment or other specific Congressional authority creating an employment relationship and (2) attaining the "benefits and emoluments" of Federal employment. *See* Pl.-App. Br. 6-14. But there is no indication that Congress intended to bring about such a dramatic overhaul of the legislative framework through the 1974 amendments.

To begin with, the text of the 1974 amendments undermines Mr. Lambro's argument. The 1974 amendments exempt Federal employees from the general definition of "employee" that applies to most other categories of employees, and then use a separate subsection to define Federal "employee[.]" *See* 29 U.S.C. §

203(e)(1)-(2).  Carving out Federal employees from the general definition of "employee" is inconsistent with an intent to abrogate the distinction between Federal and private-sector employment.  Moreover, Congress plainly relied on and expressly cited to Title 5 when it enacted the 1974 amendments: in defining "executive agencies" and "military departments," the 1974 amendments incorporate the definitions contained in Title 5.  *See* 29 U.S.C. § 203(e)(2)(A). Congress, therefore, had the distinctive nature of Federal employment in mind when it enacted the 1974 amendments to the FLSA.  *See Jackson v. Modly*, 949 F.3d 763, 770 (D.C. Cir. 2020) ("[W]e have reason to look to the definition of employee in Title 5 because the Congress explicitly directed us there.").

Especially given these textual indications of Congress's intent, the 1974 amendments are best read as consistent with the legal framework that has long governed Federal employment.  This Court has applied the presumption that Congress "legislate[s] against the backdrop of existing law."  *Morgan v. Principi*, 327 F.3d 1357, 1361 (Fed. Cir. 2003); *see also Raney v. Fed. Bureau of Prisons*, 222 F.3d 927, 932 (Fed. Cir. 2000) (presuming that Congress used "reasonable attorney fees" in "the Back Pay Act with this established statutory construction in mind"); *McDermott Intern., Inc. v. Wilander*, 498 U.S. 337, 342 (1991) (interpreting "seaman" in light of longstanding principles of maritime law).  Here, there is no basis for contrarily presuming that Congress was unaware of the

longstanding principles governing Federal employment, or that it departed from them by not expressly reiterating them in the 1974 amendments. *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 699 (1979) ("[I]t is not only appropriate but also realistic to presume that Congress was thoroughly familiar with these unusually important precedents from this and other federal courts and that it expected its enactment to be interpreted in conformity with them.").

Indeed, courts routinely take this analytical approach when construing statutes relating to Federal employment. In *Testan*, the Supreme Court construed the Classification Act as being consistent with the "established rule . . . that one is not entitled to the benefit of a position until he has been duly appointed to it[]" in the absence of any statutory indication to the contrary. 424 U.S. at 402. To similar effect, this Court has considered "the peculiar nature of the statutory framework surrounding federal employment[]" when interpreting the 1974 amendments to the FLSA. *See Billings*, 322 F.3d at 1334. And the Court of Federal Claims has explained that, "when a statute limits its applicability, at least in part, to only United States employees, we presume that Congress had in mind the definition of a federal employee from the statutes that govern them." *Griffin*, 124 Fed. Cl. at 106.

Applying these principles to the issue in this appeal, the 1974 amendments did not transform an independent contractor such as Mr. Lambro into a Federal "employee" under the FLSA. This Court has described "employment rights under

25

the FLSA" as among those "benefits and emoluments" that are conferred by appointment.  *Doe v. United States*, 513 F.3d 1348, 1355 (Fed. Cir. 2008).  As we have explained above, the distinctive legal framework governing Federal employment requires that an individual be appointed or hired as a Federal employee pursuant to specific Congressional authority to be entitled to the benefits of Federal employment.  *E.g., Hamlet*, 63 F.3d at 1101.  Considering the significance of the principle that Federal employees receive their benefits through appointment or other express Congressional authorization, and the frequency with which it has been enunciated for a century, Mr. Lambro's position—that Congress intended to extend the "benefits and emoluments" of Federal employment, such as pay, to contractors who have long been excluded from such "benefits and emoluments" without making this intent clear—is unreasonable and unfounded.

Indeed, Mr. Lambro identifies no indication that Congress believed that the 1974 amendments would extend legislative protection to contractors who were not appointed or hired pursuant to express statutory authorization.  To the contrary, the legislative history reflects an assumption that the 1974 amendments would apply to individuals who were already subject to Title 5.  Objecting to the proposed expansion of the FLSA to Federal employees, the Civil Service Commission expressed a concern that "Federal employees are already covered by special pay provisions in title 5, United States Code[,] and that enactment of this legislation

would confuse the administration of these provisions and could raise jurisdictional

problems of administration." *See* H. Comm. on Education and Labor, Fair Labor

Standards Amendment of 1974, H. Rep. No. 93-913 (1974), *reprinted in* 1974

U.S.C.C.A.N. 2811, 2837.  After noting such concerns (and not disputing their

premise), the Committee Report explained that although the Department of Labor

would generally administer the FLSA, "[t]he committee resolved this matter by

including Federal employees within the coverage of the Act and charging the Civil

Service Commission [*i.e.*, OPM's predecessor] with responsibility for

administration of the Act so far as Federal employees (other than employees of the

Postal Service, the Postal Rate Commission or the Library of Congress) are

concerned." *Id.*; *see Zumerling v. Devine*, 769 F.2d 745, 749-50 (Fed. Cir. 1985).[6]

Nevertheless, Mr. Lambro takes the view that the 1974 amendments shunted

aside the existing framework for how to qualify for the "benefits and emoluments"

---

[6]  The Committee Report also explained that "[i]t is the intent of the committee that the [Civil Service] Commission will administer the provisions of the law in such a manner as to assure consistency with the meaning, scope, and application established by the rulings, regulations, interpretations, and opinions of the Secretary of Labor which are applicable in other sectors of the economy."  H. Comm. on Education and Labor, Fair Labor Standards Amendment of 1974, H. Rep. No. 93-913 (1974), *reprinted in* 1974 U.S.C.C.A.N. 2811, 2837.  In light of the baseline assumption that the individuals covered by the proposed amendments to the FLSA were already covered by Title 5, and the lack of recognition of any intent to expand the "benefits and emoluments" of Federal employment to Federal contractors, this statement does not reflect an intent to depart from the traditional principles governing who is a Federal employee.

of Federal employment and opened up the "benefits and emoluments" of Federal employment to Federal contractors.  This contention would require the Court to conclude that, when enacting the 1974 amendments to the FLSA, Congress *sub silentio* departed from more than a century of precedent and legislation recognizing the distinctive nature of Federal Government employment.  And the Court would have to accept that only now, more than 48 years later, is this significant expansion of who qualifies as a Federal employee coming to light.  But Congress does "not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 468 (2001).

Finally, Mr. Lambro takes issue with the trial court's reliance on the Supreme Court's decision in *Testan*.  Pl.-App. Br. 19-20.  He appears to argue that the rule articulated in *Testan* is a jurisdictional principle with no application to plaintiffs' substantive rights.  *See id.*  In so arguing, he relies on a decision from this Court interpreting the Military Pay Act.  *See Dysart v. United States*, 369 F.3d 1303, 1314 (Fed. Cir. 2004).

Mr. Lambro is incorrect.  In articulating the "established" rule governing Federal employment, *Testan* echoed a line of decisions from the Court of Claims that addressed the scope of plaintiffs' substantive rights.  *See Ganse*, 180 Ct. Cl. at 186 (". . . Federal Government employees are entitled only to the salaries of

positions to which they are appointed . . . ."); *Price*, 112 Ct. Cl. at 200 (same);

*Coleman v. United States*, 100 Ct. Cl. 41, 42 (1943) ("Plaintiff is entitled to no

more than the salary of the office to which he was appointed . . ."); *see also Testan*,

424 U.S. at 407 ("We therefore conclude that neither the Classification Act nor the

Back Pay Act creates a *substantive right* in the respondents to backpay for the

period of their claimed wrongful classifications.") (emphasis added).  Applying the

presumption that Congress would not silently alter such a fundamental principle of

Federal employment law, *Testan* construed the Classification Act not to be money-

mandating.  424 U.S. at 399-403; *United States v. Mitchell*, 463 U.S. 206, 217

(1983).  The presumption takes on a different significance when applied to the

FLSA, which we acknowledge is money mandating.  *See Abbey v. United States*,

745 F.3d 1363, 1372 (Fed. Cir. 2014).  Although interpreting the FLSA in light of

the "established rule" governing Federal employment does not affect the

jurisdictional analysis here, it makes clear that "plaintiff's case does not fit within

the scope of the [money-mandating] source"; *i.e.*, that plaintiff cannot state a claim

under the FLSA.  *See Fisher v. United States*, 402 F.3d 1167, 1175-76 (Fed. Cir.

2005) (distinguishing between jurisdictional and merits analyses required in

Tucker Act cases).

   Mr. Lambro's argument to the contrary overreads *Dysart*.  In *Dysart*, the

Court considered a United States Navy officer's contention that he had been

unlawfully denied promotion to rear admiral.  369 F.3d at 1305-06.  The Court

noted that the claim was brought under the Military Pay Act, which permits suits

for denied military pay, and that the "Corrections Board statute, 10 U.S.C. § 1552,

provides for correction of military records if a promotion has been improperly

denied[.]"  *Dysart*, 369 F.3d at 1315.  Accordingly, the Court wrote, "redress may

be afforded for a promotion improperly denied[]" because "[i]t is apparently

assumed that the constitutionally mandated steps in the appointment process . . .

would be followed absent improper action by subordinate officials[.]"  *Id.*  After

noting the "established rule" in *Testan*, the Court deemed it "inapplicable" because

the "Military Pay Act is a money-mandating statute[.]"  *Id.  Dysart* thus explained

that, although decisions not to promote do not typically give rise to Tucker Act

jurisdiction, the Military Pay Act was a money-mandating statute that provided the

Court with jurisdiction to consider the decision not to promote in that case.  *See id.*

But *Dysart*'s jurisdictional analysis cannot reasonably be stretched to mean that the

"established rule" articulated in *Testan*—which is itself a long-recognized

substantive principle of Federal employment law—has no relevance to the scope of

substantive rights conferred by Federal employment statutes.  To the contrary, for

the reasons we have explained above, the most reasonable conclusion is that

Congress was legislating with the settled understanding of Federal employment in

mind when it enacted the 1974 amendments to the FLSA.

Mr. Lambro thus provides no reason to conclude that Federal contractors like him are entitled to the "benefits and emoluments" of Federal employment.

> 3.    Precedent Interpreting The FLSA Supports The Trial Court's Construction

The trial court's decision is further buttressed by precedent.  Courts have consistently held that only individuals who are appointed or are hired pursuant to specific Congressional authority creating an employment relationship are Federal "employee[s]" under the FLSA.

This Court so held the one time it addressed this issue.  In a non-precedential decision, this Court rejected detainees' arguments that their voluntary labor at an Immigration and Naturalization Service detention center, for which they were paid $1 per day, made them Federal "employee[s]" under the FLSA.  *Guevara*, 1992 WL 1029, at *2.  "Absent proper appointment," the Court explained, "an individual cannot claim the benefits and entitlements that accompany federal employment."  *Id.*  The detainees were not appointed as Federal employees, the Court held, and "[a]s a consequence, the federal government as an employer was never in the position of having to pay wages to these detainees as federal employees under the FLSA."  *Id.*  "[Q]uestions raised . . . of the scope of employer/employee definitions under the [FLSA], and the proper interpretation of the so-called 'economic reality' test for distinguishing employees from

independent contractors," the Court explained, "are beside the point." *Id.* Although Mr. Lambro attempts to distinguish this case on its facts, Pl.-App. Br. 21, *Guevara*'s refusal to apply the economic realities test to individuals working for an executive agency undermines his FLSA claims just as it disposed of the *Guevara* plaintiffs' claims.

The trial court correctly followed *Guevara*'s lead here. Appx000007.

Other decisions from the Court of Federal Claims have similarly rejected arguments that a Federal contractor was an "employee" under the FLSA. In *Diaz*, a contractor for the Postal Service argued that he had been misclassified as an independent contractor under the FLSA. 156 Fed. Cl. at 275-76. Like Mr. Lambro, the plaintiff in *Diaz* argued that he was an "employee" under the economic realities test. *Id.* In rejecting this argument, the trial court explained that "[e]ach argument Mr. Diaz advances may have been relevant if the dispute at hand was not against a federal agency." *Id.*; *see also Tetzlaff v. United States*, No. 15-161C, 2015 WL 7585333, at *1 (Fed. Cl. Nov. 25, 2015) (holding that plaintiff who "was never properly appointed as a federal employee, and [does] not [otherwise] plead[ ] any basis for [her] entitlement to the status of [a] federal employee for purposes of the FLSA" could not state FLSA claim) (cleaned up).

The trial court's decision is thus supported by precedent in this circuit interpreting the definition of "employee" under the FLSA.

4.      Mr. Lambro's Reliance On Precedent Interpreting Other
Statutory Schemes And On Policy Considerations Is Misplaced

In response to the precedent relied on by the trial court, Mr. Lambro

discusses cases interpreting other statutes.  He also asserts that policy

considerations support his position.  But his reliance on precedent interpreting

other statutory schemes is misplaced, and his policy arguments provide no reason

to displace the long-established principles governing Federal employment.

Mr. Lambro primarily relies on a D.C. Circuit decision that considered

whether a Federal contractor was an "employee" for the purposes of a sex

discrimination claim brought under Title VII.  *See* Pl.-App. Br. 16-17, 20-21

(discussing *Spirides v. Reinhardt*, 613 F.2d 826, 831 (D.C. Cir. 1979)).  The D.C.

Circuit concluded that, although the appellant was not an "employee" under the

civil service laws, the definition of "employee" contained in the "civil service

laws" was not dispositive.  613 F.2d at 831.  The court in *Spirides* reasoned that the

"[u]se of the restrictive civil service definition here would not effectuate the broad

remedial purposes of the [Civil Rights] Act [of 1964], and would therefore be

inappropriate." *Id.*

*Spirides* is readily distinguishable.  Although Mr. Lambro perceives

significance in the fact that *Spirides* involved a predecessor to the agency that

contracted with Mr. Lambro, Pl.-App. Br. 20, this factual coincidence is irrelevant

33

to the legal issues before this Court.  What is important, though, is that the court in *Spirides* was construing the Civil Rights Act of 1964 rather than the FLSA.  613 F.2d at 831.  The Civil Rights Act of 1964 concerns protections against invidious discrimination—a protection that Congress has extended where no employment relationship exists.  *See* 42 U.S.C. § 2000e-2 (prohibiting discrimination against applicants for employment); 42 U.S.C. § 3604 (prohibiting discrimination in sale or rental of housing); 20 U.S.C. § 1681(a) (prohibiting discrimination on the basis of sex in educational programs).  Protection from discrimination is thus not among the "benefits and emoluments" of Federal employment—unlike pay under the 1974 amendments to the FLSA, which is.  *See Doe*, 513 F.3d at 1355.  Accordingly, the line of precedent conditioning the "benefits and emoluments" of Federal employment on appointment had no application in *Spirides*, which instead focused on the "broad remedial purposes" of the Civil Rights Act of 1964.  613 F.2d at 831.

Moreover, *Spirides* must be read in light of a more recent decision that Mr. Lambro does not mention.  In *Jackson*, the D.C. Circuit concluded that uniformed members of the armed services are not "employees" under Title VII.  949 F.3d at 775.  In explaining that its decision was not inconsistent with *Spirides*, *Jackson* reasoned that Title VII "defines military departments by express reference to the civil service laws."  *Id.* at 770.  The panel therefore wrote that, "unlike in *Spirides*, here we have reason to look to the definition of employee in Title 5 because the

Congress explicitly directed us there." *Id.* The same reasoning applies here. Title

VII's definition of "employees" of "military departments" refers to Title 5; the

FLSA's definition of "employee[s]" of "executive agencies" does too. *Compare*

42 U.S.C. 2000e-16(a) (applying to "[a]ll personnel actions affecting employees or

applicants for employment . . . in military departments as defined in section 102 of

Title 5 . . .") *with* 29 U.S.C. 203(e)(2)(A) (defining "an individual employed by a

public agency" to include "any individual employed by the Government of the

United States -- in any executive agency (as defined in section 105 of such title)").

The D.C. Circuit's framework for analyzing Title VII is thus consistent with the

trial court's analysis of the FLSA here.

To be sure, *Jackson* distinguished its facts from those considered in *Spirides*

by noting that *Jackson* did not involve a claim brought by an independent

contractor. 949 F.3d at 770. *Jackson* further explained that the panel was not

"displac[ing] the test for distinguishing independent contractors from

employees[.]" *Id.* But the logic of the principle articulated in *Jackson* nonetheless

applies equally to independent contractors. *Jackson* explained that a statute's

reference to Title 5's definition of "employee" demonstrates Congressional intent

to incorporate the limitations contained in Title 5. 949 F.3d at 770. Title 5's

definition of "employee" excludes uniformed members of the armed services and

independent contractors alike. *Jackson*'s analytical approach should, therefore,

apply in precisely the same way to independent contractors as it does to uniformed members of the armed services.

The remainder of the cases cited by Mr. Lambro are unhelpful to his appeal. They involve a variety of statutes and therefore apply different tests to assess whether the plaintiff is an "employee." Pl.-App. Br. 15-18.[7] But these disparate cases have one salient commonality: none engage with the precedent from the Supreme Court, this Court, and the Court of Claims delineating what is required before an individual is entitled to the "benefits and emoluments" of Federal employment. As such, none have persuasive value.

Mr. Lambro is no better served by his putative policy arguments, which are both cursory and confusing. He asserts that the trial court's construction of the FLSA treats Mr. Lambro differently from appointed Federal employees and private sector contractors, Pl.-App. Br. 21, but we have explained above the policy

---

[7] *See Lopez v. Johnson*, 333 F.3d 959, 962 (9th Cir. 2003) (interpreting the Rehabilitation Act); *Sibbald v. Johnson*, 294 F. Supp. 2d 1173, 1175 (S.D. Cal. 2003) (interpreting Title VII); *Olson v. United States by and through Dep't of Energy and Bonneville Power Administration*, No. 3:15-cv-02216-HZ, 2018 WL 2090604, at *6 (D. Or. April 30, 2018) (interpreting the Family Medical Leave Act (FMLA)); *Wilson v. MVM, Inc.*, No. CIV.A.03-4514, 2004 WL 1119926, at *1 (E.D. Pa. May 18, 2004) (interpreting the Rehabilitation Act and the Age Discrimination in Employment Act); *King v. Dalton*, 895 F. Supp. 831, 837-38 (E.D. Va. 1995) (interpreting Title VII); *Hurley v. Fuchs*, Civ. No. 20-850 KG/GBW, 2021 WL 4290134, at *6 (D.N.M. Sept. 21, 2021) (interpreting "employer" as defined in FLSA); *Coulibaly v. Tillerson*, 273 F. Supp. 3d 16, 38 (D.D.C. 2017) (interpreting the FMLA).

rationales for the differences between Federal and private-sector employment. He also makes arguments about the relationship between the FLSA and Title 5, but they do not make sense. *See* Pl.-App. Br. 21-22. He describes it as "concerning" that the enactment of the FLSA predated the enactment of Title 5, suggesting that Congress could not have had Title 5's definition in mind when it defined Federal "employee" in the FLSA. *Id.* But when making this point, Mr. Lambro overlooks that his appeal concerns the 1974 amendments to the FLSA, which were enacted eight years *after* Title 5 defined "employee." *Compare id. with* Pl.-App. Br. 7-8. To similar effect, when he writes that the FLSA was amended after the enactment of Title 5, "without any changes made relatively thereto," Mr. Lambro ignores that the entire basis for his appeal is post-Title 5 amendments to the FLSA. *See id.*

In any event, Mr. Lambro is asking this Court to do what the Supreme Court was "not ready" to do in *Testan*: "to tamper with [] established principles because it might be thought that they should be responsive to a particular conception of enlightened governmental policy." 424 U.S. at 400. Even if this Court were ready to go where the Supreme Court in *Testan* was not, Mr. Lambro's undeveloped policy arguments provide no reason to do so.

37

C.     Because He Was Neither Appointed Nor Hired Pursuant To Specific Authority, Mr. Lambro Is Not A Federal "Employee" Under The FLSA

For the reasons explained above, the 1974 amendments to the FLSA did not displace the longstanding principle that an individual must be appointed or hired pursuant to specific Congressional authority to be a Federal employee.  It therefore did not make independent contractors "employee[s]" of the Federal Government under the FLSA.  In light of this well-established law, the trial court was correct to dismiss Mr. Lambro's complaint.

Mr. Lambro failed to plausibly allege that he was appointed as a Federal employee or hired pursuant to specific legislation establishing an employment relationship.  Appx000010.  He does not argue otherwise in his brief.  Rather, he argues that applying the economic realities test—that is, looking at his day-to-day responsibilities as a Federal contractor—demonstrates that he was a Federal "employee."  *See, e.g.*, Pl.-App. Br. 22-23.  But this is not how Federal employment works.  *See* Appx000006-000008; *Costner v. United States*, 665 F.2d 1016, 1020 (Ct. Cl. 1981) ("An abundance of federal function and supervision will not make up for the lack of an appointment.").

Mr. Lambro also alleges that he was a personal services contractor under FAR 37.104, and that the agency violated FAR 37.104 by failing to hire him as such.  Appx000023-000024 (¶ 53-54).  In setting forth this theory, Mr. Lambro

relied heavily on allegations about an OIG report.  *See id.*  Because Mr. Lambro did not argue in his opening brief that those allegations permitted him to survive a motion to dismiss, he has waived any such arguments.  *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006).  And even if he had raised these arguments in his opening brief, they would be foreclosed by this Court's precedent rejecting arguments premised on this same OIG report.  *See Lee*, 895 F.3d at 1371.

Accordingly, Mr. Lambro has not plausibly alleged that he is a Federal "employee" under the FLSA.  Even assuming the truth of Mr. Lambro's factual allegations, the agency does not have legal authority to contravene the system of Federal employment established by Congress and recognized by courts.  *See id.*  His complaint was correctly dismissed.

## III.    The Trial Court Correctly Held That It Does Not Possess Jurisdiction To Award Declaratory Relief

Finally, Mr. Lambro argues that the trial court wrongly dismissed Count III, which seeks declaratory relief.  Pl.-App. Br. 23.

Relying on precedent interpreting the Tucker Act, the trial court held that it did not possess jurisdiction to issue declaratory relief because Mr. Lambro had not stated a claim for monetary relief.  Appx000010.  Mr. Lambro contends that he has, in fact, stated a claim for monetary relief under the FLSA.  Pl.-App. Br. 23.  But as we have shown above, because Mr. Lambro has not plausibly alleged that

he was an "employee" under the FLSA, which is the only statute he relies on, he has not stated a claim for monetary relief.

Accordingly, the trial court did not err when it dismissed Count III of the complaint.

## **CONCLUSION**

For these reasons, we respectfully request that the Court affirm the trial court's decision.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/  Eric P. Bruskin
ERIC P. BRUSKIN
Assistant Director

/s/  Matthew J. Carhart
MATTHEW J. CARHART
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Ben Franklin Station, P. O. Box 480
Washington, DC 20005
Tel: (202) 307-0313
Email: Matthew.Carhart@usdoj.gov

February 9, 2023            Attorneys for Defendant

## **CERTIFICATE OF COMPLIANCE**

Counsel for respondent certifies that this brief complies with the Court's type-volume limitation rules. *See* Fed. Cir. R. 32(a). According to the word-count calculated by the word processing system with which this brief was prepared, the brief contains a total of 9,215 words, which is within the 14,000 word limit.

/s/ Matthew J. Carhart
MATTHEW J. CARHART