**2022-2249**

---

# United States Court of Appeals
# for the Federal Circuit

---

JASON LAMBRO, Individually and on behalf of Similarly Situated Individuals,
*Plaintiff-Appellant*

v.

THE UNITED STATES,
*Defendant-Appellee*

---

Appeal from the United States Court of Federal Claims
in Civil Action No. 1:21-cv-01447

Judge Zachary N. Somers

---

## REPLY BRIEF OF APPELLANT JASON LAMBRO

Joseph A. Whitcomb, Esq.
Timothy J. Turner, Esq.
WHITCOMB, SELINSKY, P.C.
2000 S. Colorado Blvd.
Tower One, Suite 9500
Denver, CO 80222
303-534-1958
joe@whitcomblawpc.com
tim@wsmlawpc.com

March 2, 2023

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... i

REPLY ARGUMENT ............................................................................1

   I.   5 U.S.C. 2105(a) Appointment and "Hir[ing] pursuant to a Specific Congressional Authority" are Red Herrings.  These Concepts are not Part of the FLSA Analysis.  If Congress Sought to Carve Out an Exemption for Federal Employees, It would have Done So Explicitly, as It Did for Many Different Categories of Workers. ...........................................................................3

   II.   To Determine whether Independent Contractors of the Federal Government are Employees under Various Federal Statutes, Courts have Looked to the Economic Reality Test.  There is No Reason to Deviate from this Practice Here.8

   III.   The Policy Interest in Extending Labor Protections to Appellant and those Similarly Situated Outweighs the Government's Administrative Interests. ........12

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ..............................14

# TABLE OF AUTHORITIES

Page(s)

Cases

*Addison v. Holly Hill Fruit Products*,

    322 U.S. 607 (1944) ................................................................. 5

*Citicorp Indus. Credit, Inc. v. Brock*,

    483 U.S. 27 (1987) ................................................................... 5

*Coulibaly v. Tillerson*,

    273 F. Supp. 3d 16 (D.D.C. 2017) ....................................... 8, 9, 10, 12

*Hurley v. Fuchs*,

    2021 WL 4290134 (D.N.M., 2021) ............................................... 2, 8

*Jackson v. Modly*,

    949 F.3d 763 (C.A.D.C., 2020)....................................................... 11

*King v. Dalton*,

    895 F.Supp. 831 (E.D.Va.,1995)....................................................... 8

*Lopez v. Johnson*,

    333 F.3d 959 (9th Cir. 2003)....................................................... 8, 10

*Olson v. United States by and through Department of Energy and Bonneville*

    *Power Administration*,

    2018 WL 2090604 (D.Or., 2018)....................................................... 8

*Sibbald v. Johnson*,

    294 F. Supp. 2d 1173 (S.D. Cal. 2003)........................................... 7, 10

*Social Sec. Admin., Baltimore, Md. v. Federal Labor Relations Authority*,

    201 F.3d 465 (C.A.D.C., 2000)....................................................... 7

*Spirides v. Reinhardt*,

    613 F.2d 826 (D.C. Cir. 1979) ............................................. 7, 9, 10, 11

i

*Wilson v. MVM, Inc.*,

 2004 WL 1119926 (E.D. Pa. May 18, 2004) ...................................... 8, 9


**Statutes**

5 U.S.C. 105 .................................................................................................. 4

5 U.S.C. 2105(a) App .............................................................................. 3, 14

29 U.S.C. § 213 ............................................................................................. 4

29 U.S.C. § 216 ........................................................................................... 11

29 U.S.C. § 791(f) ......................................................................................... 9

29 U.S.C. § 2611(3) ...................................................................................... 9

29 U.S.C § 203(e) .......................................................................................... 4

41 U.S.C. 6701 ............................................................................................ 13

42 U.S.C. 12111 ............................................................................................ 9

42 U.S.C. § 1981a ....................................................................................... 11

42 U.S.C. § 2000e-5(g)(1) .......................................................................... 10


**Regulations**

5 C.F.R. § 551.101 ........................................................................................ 5

29 C.F.R. 553.3(b) ........................................................................................ 6

Federal Acquisition Regulation 37.104 ................................................ 6, 7, 12, 13

# REPLY ARGUMENT

In almost every respect, this is a run-of-the-mill employee-misclassification case: a company branding its workers as independent contractors, when, in reality, those workers are conventional employees, deprived of basic labor protections like minimum wage and time-and-a-half overtime pay. What makes this case different is that the "company" is the Federal Government, not Uber or FedEx or the like. In its Answer Brief, Defendant-Appellee the United States ("Appellee" or the "Government") took the position that the Federal statute that grants these kinds of basic labor protections, the Fair Labor Standards Act ("FLSA"), provides for an implied exemption for Federal workers. Answer Brief ("AB") at 11. This exemption is premised on the FLSA purportedly defining "employee" with reference to Title V of the United States Code. *Id*.

As shown in further detail below, this analysis misconceives the FLSA's plain text. To be an employee under the FLSA, one must meet the FLSA's definition of employee: the Court need not search outside the FLSA to Title V, or any other source of law, to craft a special category for Federal workers. Moreover, the Government disregarded the important fact that courts across the United States have followed the analysis urged by Plaintiff-Appellant Jason Lambro ("Appellant" or "Lambro") – that is, to examine the economic realities of Lambro's relationship with the Government, rather than to look to formalities and

labels, to determine whether he is an employee or independent contractor.  Courts have utilized this "economic reality" test to determine whether a plaintiff is an employee under the ambit and within the definitions of many Federal statutes, including the FLSA.  *See*, *e.g.*, *Hurley v. Fuchs*, 2021 WL 4290134, at *6 (D.N.M., 2021).

Finally, in its Answer Brief, the Government offered policy reasons to support the lower court's ruling.  However, these reasons amount to matters of administrative efficiency, whereas the policy reasons offered in Lambro's Opening Brief concern extending basic labor protections – which have been afforded to private-sector workers for the better part of a century – to a class of employees who have been exploited by means of the superior bargaining power of their employer.  To the extent that the Court reaches the parties' competing policy rationales, those concerning individuals' substantive rights outweigh those of the Government's ease of administration.

For these reasons, and for all the reasons set forth in Appellant's Opening Brief, the Court should reverse the ruling of the U.S. Court of Federal Claims (the "CoFC") and remand the case for further proceedings.

I.    **5 U.S.C. 2105(a) Appointment and "Hir[ing] pursuant to a Specific Congressional Authority" are Red Herrings. These Concepts are not Part of the FLSA Analysis. If Congress Sought to Carve Out an Exemption for Federal Employees, It would have Done So Explicitly, as It Did for Many Different Categories of Workers.**

In its Answer Brief, the Government argued that "Congress <u>exempted</u> Federal employees from the FLSA's general definition of 'employee,' and separately defined Federal 'employee' under the FLSA by reference to Title 5's definition of 'employee' . . .." AB at 11 (emphasis added). To start, the Government, like Lambro, looked to the applicable definition in the FLSA's text:

> (1) Except as provided in paragraph[] (2) . . ., the term "employee" means <u>any individual employed by an employer</u>.
>
> (2) In the case of an individual employed by a public agency, such term means--
>
>> (A) <u>any individual employed by the Government</u> of the United States--
>>
>>> (i) as a civilian in the military departments (as defined in section 102 of Title 5),
>>>
>>> (ii) in any executive agency (as defined in section 105 of such title)
>>>
>>> (iii) in any unit of the judicial branch of the Government which has positions in the competitive service,
>>>
>>> (iv) in a nonappropriated fund instrumentality under the jurisdiction of the Armed Forces,
>>>
>>> (v) in the Library of Congress, or
>>>
>>> (vi) [in] the Government Publishing Office . . ..

3

29 U.S.C § 203(e) (emphasis added).  Like Lambro, the Government noted that the FLSA's Section 203, Subsection (e), Paragraph (1) definition of employee is of little use:  an employee is "<u>any individual employed by an employer</u>."  29 U.S.C § 203(e)(1) (emphasis added).  But the Paragraph (2) definition under that same subsection, separately applying to employees of the Government, is hardly different:  a Federal employee[1] is "<u>any individual employed by the Government</u>." *Id*. (emphasis added).  The FLSA's plain text does not support the theory that Congress exempted Federal workers from any part of the FLSA's broad protections.

In fact, the FLSA's exemptions are quite precise, laid out in minute detail. 29 U.S.C. § 213 (titled "Exemptions") (minimum wage and hours cap exemptions for administrative and executive employees; outside salespeople; employees of camps and recreational facilities operating for less than seven months out of the year; fishing, agriculture, and newspaper employees; switchboard operators with no more than 750 stations, babysitters, private investigators, seamen on non-

---

[1] To be more precise, the complete Paragraph (2) definition applicable to the case on appeal should read "any individual employed by the Government of the United States . . . in any executive agency," executive agency being defined as "an Executive department, a Government corporation, and an independent establishment."  29 U.S.C § 203(e)(2)(A)(ii); 5 U.S.C. 105.  Despite defining "executive agency" with reference to Section 105 of Title V, there is no mention of appointment, as provided in Section 2105(a) of that title.

American vessels; border patrol agents; and baseball players; among many other enumerated types of employees). "[W]here the FLSA provides exemptions 'in detail and with particularity,' we have found this to preclude 'enlargement by implication.'" *Citicorp Indus. Credit, Inc. v. Brock*, 483 U.S. 27, 35 (1987) (quoting *Addison v. Holly Hill Fruit Products, Inc.*, 322 U.S. 607, 617 (1944)). Thus, the Government's theory that Congress created an implied exemption for Federal workers is misplaced.

The Government next identified Office of Personnel Management ("OPM") regulations purporting to concern the same definition. AB at 17 (examining 5 C.F.R. § 551.101 *et seq*.). However, the Government failed to explain why the Court should turn to an agency's implementing regulations of one statute in order to define another. In any case, the OPM is not responsible for FLSA enforcement: that responsibility is with the Wage and Hour Division of the U.S. Department of Labor ("Wage and Hour"). https://www.dol.gov/agencies/whd (last accessed February 16, 2023). If any regulations should inform or lend meaning to the FLSA's statutory language, they should be those of Wage and Hour at 28 C.F.R.

500 *et seq*[2]. Turning back to the text of the FLSA, there is simply no mention –

within Section 203, Subsection (e), Paragraph (2) definition of employee, or

anywhere else – of the concept of appointment. Likewise, Wage and Hour's

regulations do not consider appointment a required condition to receive FLSA

protection.

The Government included a cursory discussion of the creation of an

employee-employer relationship by means other than appointment – that is, the

Personal Services Contract described in Federal Acquisition Regulation ("FAR")

37.104. *See* AB at 18, n. 5. This mechanism, the FAR Part 37 Personal Services

Contract, does indeed create an employee-employer relationship between a worker

and the United States *without appointment*, so long as the action is specifically

authorized by statute. FAR 37.104(a) ("A personal services contract is

characterized by the employer-employee relationship it creates between the

---

[2] For example, 29 C.F.R. 553.3(b) states, with respect to state and local
governments, "Certain definitions already in the Act were modified by the 1974
Amendments. The definition of the term 'employer' was changed to include public
agencies and that of 'employee' was amended to include individuals employed by
public agencies. The definition of 'enterprise' contained in section 3(r) of the Act
was modified to provide that activities of a public agency are performed for a
'business purpose.' The term 'enterprise engaged in commerce or in the production
of goods for commerce' defined in section 3(s) of the Act was expanded to include
public agencies."

Government and the contractor's personnel."); FAR 37.104(b) ("Agencies shall not award personal services contracts unless specifically authorized by statute . . ..").

The Government's failure to properly utilize FAR Part 37 Personal Services Contracts with Lambro and numerous other workers is central to this case. Appx00002 (the CoFC's Order discussing complaint allegations concerning an Office of Inspector General report on improprieties surrounding the Government's contracting practices with Lambro and others). Had the Government engaged Lambro under FAR Part 37 Personal Services Contracts, rather than purchase order contracts, there would be no dispute that Lambro had FLSA protection. *See* AB at 18, n. 5 (noting that "an employee of an agency who is not appointed <u>can be an employee under the FLSA,</u> so long as she is hired pursuant to Congressional authority creating an employment relationship") (internal quotation marks omitted) (emphasis added). The issue here is whether Lambro is an FLSA employee *despite* the Government's improper labor practices. *See Social Sec. Admin., Baltimore, Md. v. Federal Labor Relations Authority*, 201 F.3d 465 (C.A.D.C., 2000). That is, whether Lambro was entitled to FLSA protection when the Government should have made Lambro an employee (or Personal Services Contractor under FAR Part 37) but failed to do so, in violation of the Government's own procurement regulations. Even if the FLSA were to allow it (it does not), the Court should not reward the Government for abusing its workers.

**II.    To Determine whether Independent Contractors of the Federal Government are Employees under Various Federal Statutes, Courts have Looked to the Economic Reality Test.  There is No Reason to Deviate from this Practice Here.**

In his Opening Brief, Lambro laid out a series of cases where different trial and appellate courts have applied the economic reality test to putative Federal employees in the context of various Federal statutes.  Opening Brief ("OB") at 15-18 (citing such cases as *Coulibaly v. Tillerson*, 273 F. Supp. 3d 16, 38 (D.D.C. 2017) (Family Medical Leave Act); *Spirides v. Reinhardt*, 613 F.2d 826, 827 (D.C. Cir. 1979) (Title VII of the Civil Rights Act); *Sibbald v. Johnson*, 294 F. Supp. 2d 1173, 1175 (S.D. Cal. 2003) (Title VII of the Civil Rights Act); *Lopez v. Johnson*, 333 F.3d 959, 962 (9th Cir. 2003) (Rehabilitation Act); *Olson v. United States by and through Department of Energy and Bonneville Power Administration*, 2018 WL 2090604, at *6 (D.Or., 2018) (Family Medical Leave Act); *Wilson v. MVM, Inc.*, CIV.A.03-4514, 2004 WL 1119926, at *1 (E.D. Pa. May 18, 2004), *aff'd*, 475 F.3d 166 (3d Cir. 2007) (Rehabilitation Act); *King v. Dalton*, 895 F.Supp. 831, 837 (E.D.Va.,1995) (Title VII of the Civil Rights Act); *Hurley v. Fuchs*, 2021 WL 4290134, at *6 (D.N.M., 2021) (FLSA).  The Government first responded by attempting to distinguish those cases on the basis that they arise from outside of this Circuit and (mostly) concern Federal statutes other than the FLSA.  AB at 34-36.

The Government summarily concluded that Lambro's non-Title VII employment discrimination cases are "unhelpful" to the instant appeal because they involve a variety of statutes and therefore apply different tests to assess whether the plaintiff is an employee. AB at 36. The following looks to these different tests, to determine whether those cases are indeed helpful or not: First, the Family Medical Leave Act defines Federal employees with specific reference to the FLSA. 29 U.S.C. § 2611(3) ("The terms 'employ', 'employee', and 'State' have the same meanings given such terms in subsections (c), (e), and (g) of [the FLSA]." Yet, courts have applied the economic reality test to putative Federal employees there. *See Coulibaly*, *Olson*, *supra*.

Second, the Rehabilitation Act looks to the Americans with Disabilities Act ("ADA") for its employment discrimination standards. 29 U.S.C. § 791(f) ("The standards used to determine whether this section has been violated in a complaint alleging nonaffirmative action employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 *et seq*.) and the provisions of sections 501 through 504, and 510,1 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201-12204 and 12210), as such sections relate to employment."). The ADA, too, points to the FLSA definition of "employee." 42 U.S.C. § 12111(4) ("The term 'employee' means an individual employed by an employer."). Yet, courts have applied the

economic reality test to putative Federal employees there, too. *See Lopez*, *Wilson*, *supra*.

The Government devoted most of its analysis in this section to employment-discrimination provisions of Title VII of the Civil Rights Act, with a focus on distinguishing the case, *Spirides*, 613 F.2d 826, an employment discrimination case centering on the same agency involved in the instant appeal. AB at 33-34. None of this analysis is compelling. First, the Government noted that the Civil Rights Act serves a broader remedial purpose, compared to the FLSA. *Id*. at 34 (noting that the Civil Rights Act of 1964 addresses employment discrimination, housing discrimination, and sex discrimination in education, among other topics). That the Civil Rights Act is broad and serves a noble, remedial purpose – to protect against invidious discrimination – is undisputed.

However, Lambro cited to cases specifically dealing with employment discrimination, where, like here, the plaintiffs' employment status was critical to determining whether there was entitlement to protection. In those cases, *Spirides*, *Sibbald*, *King*, etc., courts applied the economic reality test to answer that critical question – precisely what Lambro requested of the CoFC. The remedy for a plaintiff suing on the basis of Title VII employment discrimination is essentially the same as a plaintiff suing under FLSA misclassification: backpay plus other money damages. *See* 42 U.S.C. § 2000e-5(g)(1) (Title VII backpay available);

*compare* 42 U.S.C. § 1981a (Title VII compensatory and punitive damages available) *with* 29 U.S.C. § 216 (FLSA unpaid overtime compensation plus additional equal amount in liquidated damages available). According to the Government, such damages are available to a Title VII plaintiff suing the United States, but not to an FLSA plaintiff in the same position because FLSA damages are "benefits and emoluments" requiring appointment. This argument makes no sense. There is simply no compelling reason, in the FLSA's text or in interpreting caselaw, to immunize the Government from liability for misclassifying employees as independent contractors.

Second, the Government cited to the case *Jackson v. Modly*, 949 F.3d 763 (C.A.D.C., 2020), where the U.S. Court of Appeals for the District of Columbia Circuit held that Title VII of the Civil Rights Act does not apply to uniformed members of the armed forces. *Jackson*, 949 F.3d at 765. The Government asked the Court to limit the FLSA's scope according to the logic of *Jackson*, which appears to limit Title VII's applicability by excluding certain protections for uniformed servicemembers. AB at 35-36. But *Jackson* is clear as to its intended effect on *Spirides*: "we look to the definition of employee in Title 5 <u>not to displace the test for distinguishing independent contractors from employees</u> but to determine whether 'employees' in [Title VII] encompass uniformed servicemembers." *Jackson*, 949 F.3d at 770 (emphasis added). As the *Jackson*

court readily notes, these kinds of cases involve separate issues, separate facts, and separate standards:  there is no reason for the Court to look to principles applying only to uniformed servicemembers to decide the appropriate standard for determining whether a nominally independent contractor is truly a Federal employee.

### III.    The Policy Interest in Extending Labor Protections to Appellant and those Similarly Situated Outweighs the Government's Administrative Interests.

The Government's policy argument boils down to a single term: "orderly administration." AB at 23.  Using words like "increased flexibility," "safeguard[ing] Treasury funds," and "significant liability," the Government sought to buttress its strained administration argument by speculating as to the "not fully understood" impacts that this case might have on Federal agencies and the funds allocated to them.  *Id*. at 21-23.  Indeed, affirming the CoFC's decision to dismiss Lambro's complaint might lead to a more efficient administration of Government functions, but the Court should look to the other potential impacts, as well.

If the Court sides with the Government, the Government is free to continue to misclassify workers like Lambro until legislative intervention commands otherwise.  For example, procuring agencies might convert FAR Part 37 Personal

Services Contracts into ordinary purchase-order contracts to save money. It is conceivable that entire swathes of government contracts for services – for example, medical, IT, administrative, procurement, audit, and other areas – might be converted to individual purchase order contracts, rather than contracts with private-sector companies whose employees are entitled to FLSA protection by means of the Service Contract Act ("SCA"), 41 U.S.C. 6701 *et seq.* If the Court were to affirm, there will be no consequences for the Government depriving its workers of basic FSLA protections, like overtime pay. This is a perverse incentive.

Additionally, the Government oversells the potential impacts on efficient administration. Between briefing at the lower court and briefing the instant appeal, both parties have identified only a handful of relevant cases where this issue has been broached. That is because the Government rarely runs so far afoul of the law: more frequently, these kinds of services contracts are awarded to large government contractors, whose employees that perform the Government's work already have FLSA protection, in addition to other wide protections under the SCA (for example, prevailing compensation and safety and health protections). Otherwise, the Government simply hires workers such as Lambro as appointed employees. The relatively rare use of FAR Part 37 Personal Services Contracts necessitates the creation of an employee-employer relationship, even without appointment. Thus, even Personal Services Contractors are covered by the FLSA.

13

In any event, Lambro has not alleged that he was appointed pursuant to 5 U.S.C. 2105(a), nor has he requested that the CoFC or this Court perform some kind of retroactive quasi-appointment for purposes of his case.  Lambro has plausibly alleged that he is an employee (and that the Government is an employer) within the meaning of the FLSA.  Accepting the complaint's other allegations as true, Lambro has therefore shown entitlement to  FLSA protections.  The Court should not inject the FLSA with a new requirement that applies only to Federal workers.  To do so is contrary to the FLSA's plain text, contrary other court's analyses of similar Federal statutes, and would thwart the FLSA's purpose, as well as create perverse incentives.  Accordingly, the Court should reverse.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the foregoing reasons, Appellant respectfully requests that this Court:

1.    Reverse the CoFC's Order dismissing Lambro's complaint, counts I and II, for failure to state a claim upon which relief can be granted.

2.    Reverse the CoFC's Order dismissing Lambro's complaint, count III, for lack of subject matter jurisdiction.

3.    Remand the case for further proceedings.

Respectfully submitted this 2nd day of March 2022.

/s/ Joseph A. Whitcomb
Joseph A. Whitcomb
Timothy J. Turner

Whitcomb, Selinsky, PC
2000 S. Colorado Blvd.,
Tower One, Suite 9500
Denver, CO 80222
(303) 534-1958 (office)
(303) 534-1949 (fax)
joe@whitcomblawpc.com
tim@wsmlawpc.com

*Counsel for the Appellant*

**CERTIFICATE OF COMPLIANCE**

Counsel for Appellant certifies that this brief complies with the Court's type-volume limitation rules.  *See* Fed. Cir. R. 32(a).  According to the word-count calculated by the word processing system with which this brief was prepared, the brief contains a total of 3,098 words, which is within the 7,000-word limit.

/s/ Joseph A. Whitcomb
Joseph A. Whitcomb