# United States Court of Appeals for the Federal Circuit

---

**JASON LAMBRO, INDIVIDUALLY AND ON BEHALF OF SIMILARLY SITUATED INDIVIDUALS,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2022-2249

---

Appeal from the United States Court of Federal Claims in No. 1:21-cv-01447-ZNS, Judge Zachary N. Somers.

---

Decided: January 22, 2024

---

JOSEPH ANTHONY WHITCOMB, Whitcomb, Selinsky, PC, Denver, CO, argued for plaintiff-appellant. Also represented by TIMOTHY TURNER.

MATTHEW JUDE CARHART, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, ERIC P. BRUSKIN, PATRICIA M. MCCARTHY.

---

Before TARANTO, CHEN, and CUNNINGHAM, *Circuit Judges*.

TARANTO, *Circuit Judge*.

Jason Lambro brought this action against the United States, on behalf of himself and others similarly situated, under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. (FLSA). He alleged that the federal agency for which he had long done work under a series of contracts, Voice of America (VOA), had denied him benefits such as overtime pay guaranteed to employees under the FLSA. His key contention is that, although he was concededly not a federal employee under Title 5 of the United States Code or other non-FLSA law, he was a federal employee for FLSA purposes under the applicable definitions of "employee" and "employ" contained in the FLSA itself. The Court of Federal Claims (Claims Court)—which received the case by unopposed transfer from a district court in which it was originally filed—dismissed the action for failure to state a claim, holding that the FLSA's definitions, even if his circumstances would bring Mr. Lambro within their terms, were simply inapplicable to federal employees. *See Lambro v. United States*, 162 Fed. Cl. 344, 351, 353–55 (2022).

We reject the Claims Court's conclusion that the FLSA does not cover a person asserting coverage as a federal government employee unless a congressional authorization outside the FLSA creates the asserted employment relationship with the federal government, a condition that Mr. Lambro concededly does not meet. We hold that the FLSA itself, through its definitional provisions, provides the applicable standard for recognizing an employment relationship for FLSA purposes, so the Claims Court must evaluate whether Mr. Lambro was employed by VOA under the FLSA's own standard for being employed. We therefore vacate the Claims Court's dismissal and remand the case for further proceedings.

I

In the operative complaint, Mr. Lambro alleged that he had worked since 2002 as a studio technician for VOA, a division of what is now called the United States Agency for Global Media. Mr. Lambro performed that work under a series of purchase order agreements, renewed repeatedly, which stated that "no employer-employee relationship exist[ed]" between Mr. Lambro and VOA.[1] J.A. 18, 36. Mr. Lambro alleged, however, that VOA "significantly controlled and continues to control" his work. J.A. 18 ¶ 28. For example, he noted that he was unable to subcontract or to set his own schedule; VOA provided all his equipment; and he was expected to perform non-contracted-for tasks. J.A. 17–20. Given the significant control VOA allegedly exercised, Mr. Lambro contended that he was misclassified

[1] At first, Mr. Lambro personally contracted with VOA, but in "early 2018," he formed a limited liability company, Wayne Industries, LLC, and thereafter, his LLC contracted with VOA. J.A. 21–22. He alleges that the nature of his relationship with VOA did not change when the 2018 change occurred and that VOA never treated his LLC as an entity separate from him. We answer here—in the affirmative—only the question of whether Mr. Lambro is entitled to have the FLSA's own "employee" and "employ" definitions, as long interpreted by the courts, applied to determine whether, for FLSA purposes, he is an employee of the federal government. The Claims Court did not, in its analysis, distinguish periods when Mr. Lambro was the contractor from periods when his LLC was the contractor; nor has the government done so on appeal. We have no occasion to address, and suggest no view about, whether the identity of the contractor might play a role, when applying the FLSA's standards, in determining Mr. Lambro's status at particular times as an employee of the federal government.

as an independent contractor and should have been treated as an employee entitled to benefits, including overtime pay, under the FLSA. Mr. Lambro sought damages under the Tucker Act, 28 U.S.C. § 1491(a)(1), invoking the FLSA as a violated money-mandating statute, *see* 29 U.S.C. § 216(b), and he sought a declaratory judgment of his employee status in conjunction with the damages claim.

The government moved to dismiss, and the Claims Court granted the government's motion. In a ruling not disputed on appeal, the court concluded first that claims which accrued before January 28, 2018, were barred by the statute of limitations for FLSA claims. *Lambro*, 162 Fed. Cl. at 349–50. The Claims Court then concluded that Mr. Lambro's complaint failed to state a claim upon which relief could be granted because he was, under the complaint's facts, not a federal employee covered by the FLSA. *Id.* at 350–55. Finally, with the monetary claim dismissed, the Claims Court dismissed Mr. Lambro's request for a declaratory judgment, a ruling not challenged on appeal separately from the challenge to the dismissal of the monetary claims. *Id.* at 355.

In reaching its conclusion on the point in dispute on appeal, the Claims Court first observed that the FLSA provides a broad and rather uninformative definition of the word "employee"—namely, "any individual employed by an employer." 29 U.S.C. § 203(e)(1); *see Lambro*, 162 Fed. Cl. at 350. The court then sought "to fill in the gaps left by this definition." *Lambro*, 162 Fed. Cl. at 350. Mr. Lambro argued that the court should apply the judicially formulated standard (sometimes termed the "economic realities test") typically used in FLSA contexts, which looks to the nature of a person's work, including its supervision, to determine employee status. *Id.* at 350–51 The government argued that the general FLSA approach was not applicable to those who (like Mr. Lambro) assert FLSA coverage as federal-government employees; rather, "'only those who are appointed or are hired pursuant to specific [c]ongressional

authority creating an employer-employee relationship'" outside the FLSA may be deemed federal employees under the FLSA. *Id.* at 351 (quoting *Lambro v. United States*, No. 21-cv-1447, ECF No. 41 at 15 (Fed. Cl. Nov. 18, 2021)).

The Claims Court agreed with the government. It noted first that the FLSA, in its definitions, separates "any individual employed by an employer," 29 U.S.C. § 203(e)(1), from "an individual employed by a public agency," *id.* § 203(e)(2). *Lambro*, 162 Fed. Cl. at 351. The question, then, was whether Mr. Lambro was a "*federal* employee." *Id.*

To answer that question, the Claims Court—rather than proceed further within the FLSA or even within the definitional section, 29 U.S.C. § 203, to subsections (e) and (g)—turned to a line of cases from this court and our predecessor that described the standards, often involving appointment and related formalities, defining when a person has employee status within the civil service. *Id.* at 352. The Claims Court noted that this court has stated that "'absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government.'" *Id.* at 354 (quoting *Chu v. United States*, 773 F.2d 1226, 1229 (Fed. Cir. 1985)). Without adopting any particular definition of "federal employee," the Claims Court concluded that, because Mr. Lambro never alleged that he was appointed (and, in fact, did not seem to contest that he was not), he could not have sufficiently alleged that he was a federal employee. *Id.* at 354–55. On that basis, the Claims Court rejected the possibility of being "a *de facto federal* employee through application of the economic realities test" of the FLSA. *Id.* at 351.

The Claims Court entered final judgment on September 20, 2022. Mr. Lambro timely filed his notice of appeal

the next day. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

II

The question on appeal is one of statutory interpretation—a legal issue we decide de novo. *Dixon v. United States*, 67 F.4th 1156, 1165 (Fed. Cir. 2023); *Ampersand Chowchilla Biomass, LLC v. United States*, 26 F.4th 1306, 1310 (Fed. Cir. 2022).

The parties agree on two important underlying legal propositions. First, Mr. Lambro accepts that specific congressional authorization is necessary for the creation of an employment relationship with the federal government. Oral Arg. at 6:34–6:49, 11:28–12:31; *see also* Federal Acquisition Regulation (FAR) 37.104, 48 C.F.R. § 37.104 (noting that Congress must "specifically authorize[]" the government to enter into contracts that create an employment relationship). Second, the government accepts that "appointment" is not the sole congressionally authorized method by which agencies may create employment relationships with workers. Government's Br. at 17–18, 18 n.5; Oral Arg. at 26:41–27:36. For example, the government acknowledges that, pursuant to FAR 37.104, an agency, if specifically authorized to do so by Congress, may enter into a personal services contract with an individual, creating an employment relationship between the agency and the contracted-with worker, even though that worker has not been appointed. Government's Br. at 18 n.5; *see Lee v. United States*, 895 F.3d 1363, 1367 n.3, 1370 (Fed. Cir. 2018).

Given those two propositions, we are asked to decide whether Mr. Lambro, who concededly had no employment relationship with the federal government under any congressional authorization outside the FLSA, can nevertheless be a federal employee under the FLSA itself and thus entitled to its protections. The Claims Court answered this question in the negative, finding the absence of appointment or other specific congressional authorization outside

the FLSA dispositive. *Lambro*, 162 Fed. Cl. at 351. We disagree. We hold that the FLSA does authorize the recognition—solely for application of the FLSA's own provisions—of an employment relationship between the federal government and those federal government workers who satisfy the FLSA's definitions, notably its definitions of "employee" and "employ," under the standards long adopted by the courts. Mr. Lambro is entitled to a determination of whether he met those standards.

A

The FLSA was first enacted in 1938 "to raise substandard wages and to give additional compensation for overtime work as to those employees within its ambit, thereby helping to protect this nation 'from the evils and dangers resulting from wages too low to buy the bare necessities of life and from long hours of work injurious to health.'" *United States v. Rosenwasser*, 323 U.S. 360, 361 (1945) (quoting S. REP. NO. 75-884, at 4 (1937)). The FLSA provision on maximum hours and overtime pay, at issue here, applies to "employer[s]" in their treatment of "employees." 29 U.S.C. § 207(a)(1)–(2). It is not disputed that the provision applies to the federal government.[2]

The statutory inquiry here focuses on 29 U.S.C. § 203, which provides definitions of several words "[a]s used in this chapter." The FLSA defines "employee," in relevant part, as follows:

---

[2] In particular, § 207(a) addresses how an "employer" treats an "employee[]" who "is employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). That phrase is defined to include "an activity of a public agency." *Id.* § 203(s)(1)(C). And "public agency" is defined to include "the Government of the United States." *Id.* § 203(x).

> (1) Except as provided in paragraphs (2), (3), and (4), the term "employee" means any individual employed by an employer.
>
> (2) In the case of an individual employed by a public agency, such term means—
>
> > (A) any individual employed by the Government of the United States—
> >
> > > (i) as a civilian in the military departments (as defined in section 102 of title 5),
> > >
> > > (ii) in any executive agency (as defined in section 105 of such title),
> > >
> > > (iii) in any unit of the judicial branch of the Government which has positions in the competitive service,
> > >
> > > (iv) in a nonappropriated fund instrumentality under the jurisdiction of the Armed Forces,
> > >
> > > (v) in the Library of Congress, or
> > >
> > > (vi) the Government Publishing Office;
> >
> > . . . .

*Id.* § 203(e). It defines "employer" as including

> any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

*Id.* § 203(d). Perhaps most importantly, it defines "employ" as including "to suffer or permit to work." *Id.* § 203(g).

The text thus straightforwardly directs the inquiry to whether Mr. Lambro is, under 29 U.S.C. § 203(e)(2)(A)(ii), "employed by the Government of the United States," as relevant here, "in any executive agency (as defined in [5 U.S.C. § 105])," which means "an Executive department, a Government corporation, and an independent establishment," 5 U.S.C. § 105. The government does not dispute that VOA comes within that definition. Whether Mr. Lambro was so "employed" by VOA then depends on 29 U.S.C. § 203(g)—whether VOA suffered or permitted him to work.

The Supreme Court long ago characterized the § 203(g) definition of "employ" as "broad," *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947), and the § 203 definitions generally as "comprehensive enough to require [the FLSA's] application to many persons and working relationships, which prior to this Act, were not deemed to fall within an employer-employee category," *Walling v. Portland Terminal Co.*, 330 U.S. 148, 150–51 (1947). Decades later, in a non-FLSA case, the Court noted that the "expansive[]" definition of "employ" in the FLSA is of "striking breadth" and leads to coverage that, for example, "on its face[] goes beyond" the definition of "employee" as "any individual employed by an employer" found in the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002(6). *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 326 (1992).

The broad definition of "employ" has been applied by considering the "economic reality" of a work relationship rather than "technical concepts." *Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33 (1961) (first citing *United States v. Silk*, 331 U.S. 704, 713 (1947); and then citing *Rutherford*, 331 U.S. at 729).[3] Thus, even a worker

---

[3] As the Claims Court noted, "[t]here appears to be some variance in the factors considered by courts in

labelled an independent contractor might be an employee for FLSA purposes. *See*, *e.g.*, *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 804 (6th Cir. 2015) ("To effect Congress's broad purpose, we must look to see whether a worker, even when labeled as an 'independent contractor,' is, as a matter of 'economic reality,' an employee."); *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013) ("This inquiry is not governed by the 'label' put on the relationship by the parties or the contract controlling that relationship . . . ."); *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 570 (10th Cir. 1994) ("[O]ur inquiry is not limited by any contractual terminology . . . .").

Thus, on its face, the FLSA grants the protections at issue to all those suffered or permitted to work by the federal government, where "suffered or permitted to work" has a meaning, focused on economic realities, that courts have repeatedly set forth. This is a congressional authorization of the recognition of an employment relationship with the federal government *for FLSA purposes*. It calls for the inquiry under the judicially developed standards that the Claims Court held unavailable to Mr. Lambro.

The government relies on the fact that § 203(e)(1)'s definition of "employee" as "any individual employed by an employer" is expressly subject to exceptions, one of which is for "an individual employed by a public agency," § 203(e)(2).[4] But that separation does not remove the latter provision from the § 203(g) definition of "employ," a term used in both paragraphs (e)(1) and (e)(2). The separation

---

applying the economic realities test[.]" *Lambro*, 162 Fed. Cl. at 351. Any variance does not alter our analysis.

[4] The exceptions stated in § 203(e)(1) are for "paragraphs (2), (3), and (4)." 29 U.S.C. § 203(e)(1). Paragraph (2) concerns public-agency employees; paragraph (3) concerns certain agricultural workers; and paragraph (4) concerns certain government agency volunteers.

serves other evident purposes, permitting further specification of who qualifies as an "employee" or "employer" under the FLSA in the public-agency sphere—within the federal realm, for example, requiring that an individual "in the military departments" be a "civilian" to be covered, 29 U.S.C. § 203(e)(2)(A)(i), and identifying which parts of the "Government of the United States" are covered employers, *id.* § 203(e)(2)(A)(ii)–(vi); *see also id.* § 203(e)(2)(B) (postal service and postal regulatory commission); § 203(e)(2)(C) (certain non-federal, government entities). With all the additional specification, what is constant is the statute's use of the word "employed" without any further qualification or elaboration. *See generally*, *id.* § 203(e)(1)–(2).

Congress could have redefined "employ" in § 203(e)(2) to have a meaning different from the one set out in § 203(g) or otherwise removed § 203(e)(2), or parts of it, from the reach of § 203(g). It did not. Congress could have redefined "employee" so as to borrow the definition in Title 5, 5 U.S.C. § 2105, or to otherwise limit coverage to those persons acquiring employee status independently of the FLSA itself. It did not. In particular, in referring to an "executive agency (as defined in [5 U.S.C. § 105])," 29 U.S.C. § 203(e)(2)(A)(ii), all Congress did was identify which executive agencies were covered; it did not change the definition of being employed by those identified agencies. Textually, the § 203(g) definition applies throughout § 203(e).

As confirmation, we note that the language in § 203(e)(2) was added in 1974, Pub. L. No. 93-259, § 6(a)(2), 88 Stat. 55, 58–59 (1974), when Congress broadly extended FLSA protections to federal employees. *See* H.R. REP. NO. 93-913, at 2 (1974). The key House committee report recognized that extending FLSA protections to federal workers could cause some confusion given other provisions addressing federal workers' pay. *Id.* at 28. Congress addressed that concern by adding to an earlier bill under consideration a provision that charged the Civil Service

Commission (now, the Office of Personnel Management) with administering the FLSA for federal government employees, namely, 29 U.S.C. § 204(f) (providing that, with some exceptions, "the Director of the Office of Personnel Management is authorized to administer the provisions of this chapter with respect to any individual employed by the United States"). *See* H.R. REP. NO. 93-913, at 28; S. REP. NO. 93-358, at 27 (1973) (Conf. Rep.) (conference report for 1973 bill that was vetoed, containing provision that was unchanged in bill enacted in 1974).

OPM has adopted the FLSA's broad definition of employment in its regulation specifying who is covered:

> (a) *Covered*. Any employee of an agency who is not specifically excluded by another statute is covered by the Act. This includes any person who is:
>
> > (1) Defined as an employee in section 2105 of title 5, United States Code;
> >
> > (2) A civilian employee appointed under other appropriate authority; or
> >
> > (3) Suffered or permitted to work by an agency whether or not formally appointed.

5 C.F.R. § 551.103(a). That regulation, incorporating the terms of 29 U.S.C. § 203(g), is confirmation of our understanding of the statutory text.

B

The government points to "the presumption that Congress 'legislate[s] against the backdrop of existing law.'" Government's Br. at 24 (alteration in original) (quoting *Morgan v. Principi*, 327 F.3d 1357, 1361 (Fed. Cir. 2003)). And it expresses general concern about a reading of the FLSA that would disturb the "distinctive legal framework governing [f]ederal employment," which provides "benefits and emoluments" to federal employees, whose definition is important for "safeguard[ing] Treasury funds."

Government's Br. at 22, 26. These concerns are important ones, but they do not overcome the straightforward meaning of the FLSA text.

For one thing, the "backdrop" principle hardly points in a single direction. In 1974, when Congress was extending the FLSA to the federal government, Congress was acting against the backdrop of the FLSA's already-existing § 203(g) definition and its broad judicial interpretation. And it refrained from taking the readily available textual steps, as we have noted, that might have made that provision inapplicable to federal employees. We see no persuasive reason for not following the text of the FLSA as defining the coverage of the FLSA at issue here.

The government never demonstrates that other statutes governing federal employment actually create an incompatibility that would preclude giving the FLSA the straightforward meaning we adopt. The OPM regulation quoted above is an indication that there is no such incompatibility. Notably, the FLSA, by defining employee "[a]s used in this chapter," does not authorize the creation of an employment relationship for non-FLSA purposes. For example, workers who fall under the definition of "employee" set forth in 5 U.S.C. § 2105(a) have certain employment protections associated with the competitive service and the merit system. *See*, *e.g.*, 5 U.S.C. § 7513(b), (d) (providing for procedural protections and appeal rights for federal employees regarding personnel actions such as removal). Our holding does not mean that workers who fall under the FLSA definition would be entitled to those protections.[5]

---

[5] Our holding could affect non-FLSA statutes to the extent they explicitly apply when the FLSA applies. *See*, *e.g.*, 29 U.S.C. § 2611(3) (Title I of the Family and Medical Leave Act, defining "employ" and "employee" as having "the same meanings given such terms in subsections . . . (e)[] and (g) of section 203 of this title").

Nor does our conclusion, which is based on § 203(g)'s definition of "employ" (and its longstanding interpretation), reach statutes without that language, which would require a separate analysis.

The government urges us to look to the Title 5 definition of "employee," 5 U.S.C. § 2105(a), as part of the relevant backdrop of existing law, but the argument has evident flaws. Section 203(e)(2) does not incorporate that definition when it points to other provisions of Title 5 for other purposes, such as identifying which federal agencies can be employers. Moreover, § 2105(a) itself expressly provides a definition only "[f]or the purpose of this title," namely, Title 5 (not, *e.g.*, Title 29). 5 U.S.C. § 2105(a). And the government acknowledges that 5 U.S.C. § 2105(a) is not the only congressional authorization for formation of an employment relationship, as we noted above.

The government notes that, in *Jackson v. Modly*, the D.C. Circuit looked to Title 5 to determine whether the plaintiff, a uniformed member of the armed forces, was an "'employee[] . . . in military departments'" under Title VII of the Civil Rights Act of 1964. 949 F.3d 763, 769–70 (D.C. Cir. 2020) (quoting 42 U.S.C. § 2000e-16(a)). But Title VII, unlike the FLSA, has no definition of "employ." More generally, the issue in *Jackson* was one Title VII does not expressly answer without looking beyond its own words, whereas the FLSA does: whether only civilian military department personnel, not uniformed members of the armed forces, are covered. *Compare* 42 U.S.C. § 2000e-16(a) (Title VII) ("employees or applicants for employment . . . in military departments as defined in section 102 of [T]itle 5"), *with* 29 U.S.C. § 203(e)(2)(A)(i) (FLSA) ("civilian[s] in the military departments"). In that circumstance, the D.C. Circuit had to look beyond Title VII, and it had good textual, historical, precedential, and practical reasons to infer that the coverage of military-department employees was limited to civilian employees. *Jackson*, 949 F.3d at 768–

70. That reasoning does not extend to the different issue, under a different statute, presented in this case.

The government, like the Claims Court's opinion, points to our non-precedential decision in *Guevara v. Immigration and Naturalization Service.* 954 F.2d 733, 1992 WL 1029 (Fed. Cir. Jan. 6, 1992) (unpublished table decision). There, we held that individuals being detained by the Immigration and Naturalization Service before trial, who received $1 per day for working voluntarily, were not "employees" under the FLSA and thus not entitled to minimum wage payment. *Id.*, 1992 WL 1029 at *1. In part, we noted that the "FLSA was not intended by Congress to cover the circumstances presented by plaintiffs in this case." *Id.* We also said that a "further reason" to dismiss that case was the fact that the plaintiffs had not been appointed. *Id.* at *1–2. But appointment, as the government concedes, is not always necessary for employment status with the federal government (even for general-purpose employment status); the court in *Guevera* did not conduct the full statutory analysis presented here; and under the FLSA itself, the circumstances of *Guevara*, including the fact that the detainees "volunteer[ed]," *id.* at *1, were remarkably different from those here. *See Ndambi v. CoreCivic, Inc.*, 990 F.3d 369, 372–74 (4th Cir. 2021) (rejecting application of FLSA to custodial setting, citing wide consensus of circuits); *cf. Walling*, 330 U.S. at 152 (holding that unpaid trainees whose "work serve[d] only [their] own interest[s]" were not suffered or permitted to work and thus were not employees under the FLSA). Our non-precedential decision in *Guevara* does not alter our conclusion.

C

Mr. Lambro points to two decisions from other circuits to support his position that employee status should be determined using the ordinary FLSA standard. Neither is a FLSA case. The decisions offer him some, but limited, support.

In *Spirides v. Reinhardt*, the D.C. Circuit held that the district court had erred in granting a motion to dismiss the Title VII claims of the plaintiff, a contractor for the federal government. 613 F.2d 826 (D.C. Cir. 1979). The D.C. Circuit concluded that whether the plaintiff was a federal "employee" covered by Title VII turned on issues of fact about the economic realities of her employment. *Id.* at 831, 833. The D.C. Circuit rejected the government's argument that the controlling definition of "employee" for Title VII should be taken from 5 U.S.C. § 2105, noting that the § 2105 definition was for "'this title,' *i.e.*, Title [5]," *Spirides*, 613 F.2d at 830 (quoting 5 U.S.C. § 2105(a)), and that "[u]se of the restrictive civil service definition here would not effectuate the broad remedial purposes of the [Civil Rights] Act," *id.* at 831. We need not adopt the conclusion or reasoning of *Spirides* to reach our result here. The court in *Spirides* addressed the definition of "employee" under Title VII, not the FLSA, and Title VII does not have a section analogous to 29 U.S.C. § 203(g) defining "employ." *See generally* 42 U.S.C. § 2000e (defining "employer" and "employee" but not "employ"). But our conclusion is consistent with the D.C. Circuit's conclusion in *Spirides*—a conclusion that the D.C. Circuit in *Jackson* explicitly declined to disturb. *Jackson*, 949 F.3d at 770 (recognizing the difference between the civilian/uniformed issue and the "employ" issue).

Mr. Lambro also cites *Lopez v. Johnson*, where the Ninth Circuit affirmed the district court's grant of summary judgment against a plaintiff claiming a violation of Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791. 333 F.3d 959 (9th Cir. 2003). The Ninth Circuit concluded that it was clear from the factual record that the plaintiff, an employee of an independent contractor with the Navy, was not a federal employee under any of the argued tests for federal employment—none of them simply the Title 5 test. *Id.* at 960, 963. Section 501 borrows the "remedies, procedures, and rights" of Title VII, 29 U.S.C. § 794a(a)(1), and the Ninth Circuit consequently looked to

Title VII standards to determine whether Lopez was an employee, *Lopez*, 333 F.3d at 962. Notably, in *Lopez*, the government itself argued for the application of a common-law agency test, not for restricting the relevant law to Title 5 law, in determining Lopez's employee status. *Defendants-Appellees Brief*, No. 02-35334, 2002 WL 32126261, at *11–12 (9th Cir. Jul. 15, 2002). *Lopez* is thus consistent with the conclusion we have reached from analyzing the statutory language of the FLSA.

III

We have considered the government's other arguments and find them unpersuasive. Because the Claims Court did not consider whether Mr. Lambro plausibly alleged that he was an employee entitled to FLSA protections under the ordinary FLSA standard, and because we hold that the FLSA authorizes the application of this standard to federal and non-federal employees alike, we vacate the Claims Court's dismissal of Mr. Lambro's timely claims. We remand the case for further proceedings consistent with this opinion.

Costs are awarded to Mr. Lambro.

**VACATED AND REMANDED**